**No. 26-2238**

IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

➤◄

**AMERICAN ACADEMY OF PEDIATRICS,**

*Plaintiff-Appellee,*

*v.*

**JAMES UTHMEIER, ATTORNEY GENERAL OF THE STATE OF FLORIDA, IN HIS OFFICIAL CAPACITY,**

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, No. 1:26-cv-02401 (Kennelly, J.)

## OPPOSITION TO MOTION FOR
## STAY PENDING APPEAL

Sarah E. Harrington
  *Counsel of Record*
Amber M. Charles
Paul Killebrew
Alexandra J. Widas
Kendall T. Burchard
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Counsel for Plaintiff-Appellee American Academy of Pediatrics*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

STATEMENT ..................................................................................2

     A.    AAP Educates Medical Care Providers About Gender-Affirming Care. ...................................................................2

     B.    The Florida Attorney General Sues AAP in Florida. .............5

     C.    The District Court Enjoins the Florida Litigation. ................6

ARGUMENT ...................................................................................8

I.    Uthmeier Is Not Likely to Succeed on the Merits. ..........................9

     A.    The District Court Correctly Exercised Personal Jurisdiction. .........................................................................9

     B.    Venue Is Proper in This District ...........................................15

     C.    *Younger's* Bad Faith Exception Applies. .............................18

II.    Uthmeier Has Not Established He Would Suffer Irreparable Harm Absent a Stay. ......................................................................23

III.    The Remaining Factors Weigh Against a Stay. ...........................25

CONCLUSION ...............................................................................26

CERTIFICATE OF SERVICE .........................................................28

CERTIFICATE OF COMPLIANCE .................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. United States,*
250 U.S. 616 (1919)..................................................................25

*Advanced Tactical Ordnance Sys., LLC v.*
*Real Action Paintball, Inc.,*
751 F.3d 796 (7th Cir. 2014).............................................12

*Air Evac EMS v. McVey,*
37 F.4th 89 (4th Cir. 2022) ...............................................19

*Ariel Invs., LLC v. Ariel Cap. Advisors LLC,*
881 F.3d 520 (2018) ............................................................12

*Atl. Marine Constr. Co., Inc. v.*
*U.S. Dist. Ct. for W. Dist. of Tex.,*
571 U.S. 49 (2013)..............................................................17

*Calder v. Jones,*
465 U.S. 783 (1984).......................................................10, 11

*Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.,*
14 F.4th 624 (7th Cir. 2021) ...............................................8

*Christian Legal Soc'y v. Walker,*
453 F.3d 853 (7th Cir. 2006)............................................25

*Collins v. Kendall Cnty.,*
807 F.2d 95 (7th Cir. 1986)...............................18, 20, 23

*Def. Distributed v. Grewal,*
971 F.3d 485 (5th Cir. 2020).......................................13, 14

*Elrod v. Burns,*
427 U.S. 347 (1976).............................................................24

*Illinois v. Trump*,
  155 F.4th 929 (7th Cir. 2025) ...................................................... 8, 25

*John Crane, Inc. v. Shein Law Ctr. Ltd.*,
  891 F.3d 692 (7th Cir. 2018) ........................................................... 15

*Kalman v. Cortes*,
  646 F. Supp. 2d 738 (E.D. Pa. 2009) ............................................. 16

*Leroy v. Great W. United Corp.*,
  443 U.S. 173 (1979) ......................................................................... 17

*Majumdar v. Fair*,
  567 F. Supp. 3d 901 (N.D. Ill. 2021) .............................................. 12

*Media Matters for Am. v. Paxton*,
  138 F.4th 563 (D.C. Cir. 2025) ................................................. 13, 14

*Media Matters for Am. v. Paxton*,
  732 F. Supp. 3d 1 (D.D.C. 2024) ..................................................... 15

*Mulholland v. Marion Cnty. Election Bd.*,
  746 F.3d 811 (7th Cir. 2014) ........................................................... 19

*Myers v. Bennett Law Offices*,
  238 F.3d 1068 (9th Cir. 2001) ......................................................... 15

*Netflix, Inc. v. Babin*,
  88 F.4th 1080 (5th Cir. 2023) .................................................... 20, 22

*Nieves v. Bartlett*,
  587 U.S. 391 (2019) ......................................................................... 20

*Pettway v. Marshall*,
  No. 5:19-CV-1073-KOB, 2019 WL 3752475
  (N.D. Ala. Aug. 8, 2019) .................................................................. 19

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................... 11, 14

*Wallace v. Benware*,
  67 F.3d 655 (7th Cir. 1995) ............................................................. 26

*Wallace v. Herron,*
778 F.2d 391 (7th Cir. 1985)........................................................ 12, 15

*Woodke v. Dahm,*
70 F.3d 983 (8th Cir. 1995)............................................................... 16

*Yelp Inc. v. Paxton,*
137 F.4th 944 (9th Cir. 2025) ........................................................... 21

*Younger v. Harris,*
401 U.S. 37 (1971)..................................................................... 18, 19

**Statutes**

28 U.S.C. § 1391 ............................................................................. 15

**Other Authorities**

14D *Wright & Miller's Federal Practice & Procedure* § 3802
(4th ed. 2026) ............................................................................. 17

## INTRODUCTION

The district court enjoined Florida Attorney General James Uthmeier's Florida enforcement action after holding that the American Academy of Pediatrics ("AAP") is likely to succeed on its claim that Uthmeier's action is retaliatory and intended to suppress AAP's protected First Amendment activity. Uthmeier now seeks the extraordinary remedy of a stay pending appeal—but he does not even try to dispute the district court's careful conclusions that his suit is retaliatory and imposes irreparable First Amendment harm on AAP. Instead, he argues that the preliminary injunction is improper because his enforcement action in Florida has no connection to Illinois. But Uthmeier deliberately picked this fight with Illinois-based AAP, engaging in retaliatory actions intended to suppress AAP's speech in Illinois and to inflict predictable and serious harms on AAP in Illinois. That is sufficient to establish personal jurisdiction and venue in Illinois. And Uthmeier's failure to mount a defense on the merits underscores that the district court correctly determined that the Florida action was filed in bad faith and therefore cannot provide a basis for abstention. This Court should deny Uthmeier's motion for a stay because AAP is

1

likely to prevail on appeal.

The balance of equities also weighs strongly against entering a stay. Uthmeier would suffer no cognizable harm from pausing his retaliatory state enforcement action while this appeal of the preliminary injunction runs its course. But granting a stay would reopen the floodgates to Uthmeier's retaliation, inflicting First Amendment harm on AAP that is by definition irreparable. The Court should deny Uthmeier's motion.

## STATEMENT

### A.  AAP Educates Medical Care Providers About Gender-Affirming Care.

AAP is an Illinois-based non-partisan 501(c)(3) non-profit organization founded in 1930 to advance the health of all infants, children, adolescents, and young adults. ECF No. 4-1 at 1; *see also* ECF No. 4-2 ¶ 3. Consistent with its mission, AAP issues guidance and policy statements on a wide range of pediatric topics to assist medical practitioners in providing evidence-backed care to their patients. ECF No. 4-2 ¶ 5; *see also* ECF No. 1 ¶ 1.

In 2018, AAP promulgated a policy statement entitled "Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents" ("2018 Policy Statement"). *See* ECF No. 4-1

2

at 2; ECF No. 1-1.  With the goal of "improv[ing] health care access and eliminat[ing] disparities" for children and youth who identify as transgender and gender diverse ("TGD"), the 2018 Policy Statement provided recommendations based on scientific research to aid practitioners' provision of evidence-backed gender affirming care for such youth.  ECF No. 1-1 at 1.  The recommendations, which are directed to "pediatric providers," address diverse topics such as insurance coverage, electronic health records, and research—and include a recommendation "that youth who identify as TGD have access to comprehensive, gender-affirming, and developmentally appropriate health care that is provided in a safe and inclusive clinical space."  *Id.* at 10.  The Policy Statement also describes various components of available gender-affirming care and the age range when such care is typically offered, based on then-available medical and scientific data, while noting that "eligibility criteria is usually determined on a case-by-case basis with the adolescent and the family along with input from medical, mental health, and surgical providers."  *Id.* at 6 tbl. 2 n.d.  The Policy Statement states expressly that it "does not indicate an exclusive course of treatment or serve as a standard of medical care" and that appropriate care may vary, "taking

3

into account individual circumstances." *Id.* at 1.

In keeping with its mission of promoting optimal health for all children, and in light of its expertise on gender-affirming care, AAP has sought to educate medical providers about gender-affirming treatment options and has spoken out against misinformation regarding the same. Relevant here, in 2022, AAP published an article in its peer-reviewed journal, *Pediatrics*, in which the article's authors summarized actions they took in response to Florida Department of Health guidance advocating restrictions on gender-affirming care for TGD youth. ECF No. 22-2 ¶ 79 & n.98. AAP also submitted comments as part of notice-and-comment rulemaking opposing a rule promulgated by Florida's Agency for Health Care Administration that proposed excluding gender-affirming care from Medicaid coverage. *Id.* AAP and other medical organizations later submitted an amicus brief in support of plaintiffs seeking to enjoin that rule, explaining that it "did not rest on scientific knowledge." *Id.* ¶ 81 (referencing *Dekker v. Harris*, No. 4:22-cv-00325, ECF No. 34-1 (N.D. Fla. Sep. 27, 2022)). Florida responded by serving third-party subpoenas on AAP and others who advocated for appropriate access to gender affirming care. ECF No. 22-2 ¶ 82.

4

## B.     The Florida Attorney General Sues AAP in Florida.

On December 9, 2025, following a yearslong crusade against AAP and gender-affirming care by a host of Florida state officials,[1] *e.g.*, ECF No. 1 ¶¶ 8–9, 129–172; ECF No. 4-3, Exs. 1–10, Attorney General Uthmeier filed an enforcement action against AAP in Florida state court, alleging AAP had violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and RICO Act by engaging in protected medical education and public advocacy on gender-affirming care. *See* ECF No. 1-2. He later amended his complaint to add a claim under the Florida Antitrust Act, which defined the relevant market as treatment for TGD youth "in the United States." *See* ECF No. 22-2 ¶¶ 276–84. Uthmeier seeks statutory penalties of $1 million for each alleged violation of the Antitrust Act and RICO Act, an additional $10,000 for each alleged FDUTPA violation, as well as declaratory and nationwide injunctive relief, including restricting AAP's "future activities" and "[o]rdering the dissolution and reorganization" of AAP's operations. *See*

---

[1] For example, in commenting on the Florida action, the Florida Governor's Chief of Staff called AAP "little more than an advocacy organization for leftist politicians and special interest groups" that "thinks your children are theirs to raise according to their amoral collectivist code." ECF No. 1 ¶ 137.

*id.*, Prayer for Relief.

Uthmeier alleged that the 2018 Policy Statement and other of AAP's gender-affirming care-related activities, including filing an amicus brief and publicly critiquing Florida's approach to gender-affirming care, were commercial activities (or evidence thereof) constituting "deceptive and unfair trade practice[s]" under Florida law. *Id.* ¶¶ 295, 311–13. When Uthmeier announced the lawsuit, he explained that it was warranted because AAP was responsible "for mutilating kids and misleading families." Dkt. 2-2 ("Op.") 14, 52. Elsewhere, Uthmeier clarified that he brought suit to "hurt" AAP and other medical organizations "in their wallet" to "end [gender affirming care] … once and for all," ECF No. 1 ¶ 171 (citations omitted).

Uthmeier did not serve the initial complaint on AAP for three months, during which time he embarked on a press tour promoting the lawsuit. *See* ECF No. 22 at 1. AAP's motion to dismiss the Amended Complaint is pending before the Florida state court. *Off. of Att'y Gen. v. WPATH*, No. 2025-CA-002660 (Fla. 19th Jud. Cir. Ct.).

## C.    The District Court Enjoins the Florida Litigation.

On March 4, 2026, AAP filed this lawsuit and moved for a

6

preliminary injunction to enjoin Uthmeier's retaliatory enforcement action in Florida. *See* ECF Nos. 1, 4. AAP argued Uthmeier's Florida suit is an unconstitutional attempt to suppress AAP's First Amendment-protected speech. *See generally* ECF No. 4-1. In opposing AAP's preliminary injunction motion, Uthmeier concurrently moved to dismiss based on lack of personal jurisdiction, improper venue, *Younger* abstention, and failure to state a claim. *See* ECF No. 21.

After full briefing on the motions, review of the evidentiary record, and a hearing, the district court denied Uthmeier's motion to dismiss and granted AAP's preliminary injunction motion in a carefully reasoned 58-page opinion. *See generally* Op.

The district court began by rejecting each of the threshold procedural defenses Uthmeier raised in his motion to dismiss. The court reasoned that it could exercise personal jurisdiction over Uthmeier because his own suit-related conduct established minimum contacts with Illinois, Op. 17–25, and that venue was proper because a substantial part of the events giving rise to AAP's First Amendment retaliation claim occurred in the district, *id.* at 25–27. The court further rejected Uthmeier's *Younger* abstention arguments, holding that the Florida

7

action was brought in bad faith and without a reasonable expectation of success. *Id.* at 37–56.

The district court also granted AAP's request for a preliminary injunction. The court concluded that AAP is likely to succeed on the merits of its First Amendment retaliation claim because it established that its advocacy was protected speech, its advocacy was the but-for cause of the Florida enforcement action, and the Florida action is likely to create a chilling effect, including because Uthmeier seeks substantial monetary penalties. *Id.* at 31, 56–57. The district court preliminarily enjoined Uthmeier from pursuing the Florida enforcement action while this case proceeds. ECF No. 39; *see also* Dkt. 2-3.

## ARGUMENT

Uthmeier is not entitled to a stay pending appeal. Uthmeier bears the burden of showing that he has "a likelihood of success on the merits" and "a threat of irreparable harm absent a stay," and then that "the balance of harms" and "the public interest" weigh in his favor. *Illinois v. Trump*, 155 F.4th 929, 936 (7th Cir. 2025) (quoting *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 14 F.4th 624, 628 (7th Cir. 2021)). He cannot carry those burdens.

8

## I.    Uthmeier Is Not Likely to Succeed on the Merits.

As the district court found, Uthmeier filed the Florida action in bad faith, as retaliation against Illinois-based AAP for its protected expressive activity and for the purpose of harming AAP in Illinois, including by suppressing AAP's protected First Amendment activity. Binding decisions of this Court and the Supreme Court make clear both that AAP's suit belongs in the Northern District of Illinois and that the district court's preliminary injunction is likely to be upheld on appeal. Because Uthmeier cannot show that he is likely to prevail on any of the threshold arguments he raises in his motion, this Court should deny his request for a stay pending appeal.

### A.    The District Court Correctly Exercised Personal Jurisdiction.

Uthmeier's primary argument is that the district court lacks personal jurisdiction over him because he has not established the necessary minimum contacts with Illinois that due process requires. His arguments misconstrue controlling Supreme Court precedent, brush aside or ignore persuasive holdings of other courts of appeals, and cannot be reconciled with his retaliatory campaign against AAP.

This Court need look no further than the Supreme Court's decision

9

in *Calder v. Jones*, 465 U.S. 783 (1984), to affirm the district court's conclusion that it has personal jurisdiction over Uthmeier. In *Calder*, a California plaintiff sued Florida defendants, alleging that an article they wrote and edited in Florida and then published nationwide was libelous and harmed her in California. Like Uthmeier here, the *Calder* defendants argued that the court lacked jurisdiction because all of their relevant actions were in Florida. The Supreme Court rejected that view—as did the district court in this case—explaining that the defendants had established the requisite contacts with California because the harmful "effects" of their Florida-based conduct were felt in California. *Id.* at 788–89. The Court reasoned that the defendants "knew" that their actions in Florida "would have a potentially devastating impact upon" the plaintiff "[a]nd they knew that the brunt of that injury would be felt by [the plaintiff] in the State in which she live[d] and work[ed]." *Id.* at 789–90. The "effect" of that harm was enough, the Court held, to establish specific jurisdiction.

More recently, the Supreme Court expanded on the reasoning of *Calder*, explaining that the in-state "effects" of the *Calder* defendants' out-of-state conduct connected the defendants to California, not just to

10

the plaintiff. *Walden v. Fiore*, 571 U.S. 277, 287−88 (2014). Because California was "the focal point" of the *Calder* defendants' Florida-based activity, and because those defendants' actions predictably injured the plaintiff in California, the defendants had established sufficient California contacts to subject themselves to specific personal jurisdiction there. *Id.* (quoting *Calder*, 465 U.S. at 789).

The same is true here. The "focal point" of Uthmeier's conduct in Florida is AAP's actions and statements in Illinois. Just as the harmful effects of libel are felt where the target of the libel lives, the harmful effects of a retaliatory enforcement action are felt where the target of the action is at home and engages in First Amendment-protected activity. Here, that is Illinois. And just as the focus of the libel in *Calder* was the plaintiff's activity in California, the focus of Uthmeier's retaliatory conduct is AAP's protected activity in Illinois.

The argument in favor of personal jurisdiction is stronger here than in *Calder* because Uthmeier seeks through his enforcement action to impose serious and long-lasting harms on AAP *in Illinois*. As the district court explained, Uthmeier seeks to enjoin AAP from making statements about gender-affirming care—statements that would be made in Illinois

11

where AAP is at home.  Uthmeier also seeks to impose potentially millions of dollars in penalties on AAP, again in Illinois.  And Uthmeier asks for relief broad enough to include an order to *dissolve* or reorganize AAP, an Illinois-based non-profit, and to restrict its future activities, which occur in Illinois.  The harms of Uthmeier's statements impugning the integrity of AAP, including by accusing AAP of mutilating children, are similarly felt in Illinois in the same way that the harms in *Calder* were felt in California.  In short, Uthmeier, on behalf of Florida, picked this fight with AAP by directing unconstitutionally retaliatory action, with extensive animus-driven commentary, at AAP in Illinois. *Cf. Majumdar v. Fair*, 567 F. Supp. 3d 901, 910–13 (N.D. Ill. 2021) (holding that effects in Illinois of out-of-state defendant's social media campaign connected defendant to Illinois).  The district court correctly found personal jurisdiction based on those purposeful contacts.[2]

Uthmeier suggests (at 11) that his Illinois-focused litigation

---

[2] Uthmeier's contention (at 9) that this Court confined *Calder* to libel claims in *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), and in *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520 (2018), is puzzling.  Neither decision comes close to such a holding, which would be inconsistent with *Calder* and *Walden*.  In any event, this court has expressly held that "[t]he Supreme Court did not intend the *Calder* 'effects' test to apply only to libel cases." *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985).

activity should not count for jurisdictional purposes because he is engaged in an enforcement action on behalf of his State. But he cites no authority for that notion—and courts of appeals that have considered materially identical situations (*i.e.*, suits to enjoin a state attorney general's enforcement and/or investigatory action) have uniformly exercised jurisdiction. In *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1736 (2021) (Mem.), the Fifth Circuit found jurisdiction over the New Jersey Attorney General in a suit to enjoin enforcement efforts in New Jersey. *Id.* at 492–95. Writing for the panel, Judge Jones relied on *Calder* to explain that, by sending a cease-and-desist letter to a Texas-based company, the New Jersey Attorney General established the requisite jurisdictional contacts in Texas—because he knew that the "brunt of the injury" would be felt by the Texas company whose speech was chilled. *Id.* at 495−96. The D.C. Circuit reached a similar conclusion in *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025), upholding jurisdiction over Texas Attorney General Paxton in a suit seeking to enjoin his Texas-based investigation and enforcement actions against a D.C.-based media company. Writing for that panel, Judge Edwards explained that "the

13

censorship-based effects" in D.C. of Paxton's concededly "retaliatory" actions "connected Paxton to the District rather than to just" the plaintiffs. *Id.* at 578. Uthmeier does not acknowledge the D.C. Circuit's decision and makes no effort to distinguish *Defense Distributed*. This Court should follow the lead of its sister circuits and uphold the district court's exercise of jurisdiction.

Uthmeier further errs in arguing that his action of serving the Amended Complaint on AAP in Illinois is irrelevant for jurisdictional purposes. As the Fifth Circuit explained in *Defense Distributed*, 971 F.3d at 495, the Supreme Court held in *Walden* that "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact" for jurisdictional purposes, 571 U.S. at 285. Here, Uthmeier made "physical entry into" Illinois "through an agent" to serve the complaint. *Id.*; *see also* ECF No. 21-2. The D.C. Circuit expressly held that precisely that type of behavior, combined with investigatory actions that targeted an in-state company, supported finding jurisdiction over an out-of-state

14

attorney general.  The same is true here.[3]

Finally, exercising jurisdiction comports with notions of fair play and substantial justice because Uthmeier intentionally targeted AAP's activities (and existence) in Illinois with his retaliatory campaign. Because he cannot show that he is likely to succeed on his jurisdictional argument, no stay is warranted.

### B.    Venue Is Proper in This District

Uthmeier's venue argument similarly lacks merit.  Under the operative venue statute, civil actions may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  As the district court concluded, Op. 26, a "substantial part" of the events giving rise to AAP's retaliation claim occurred in this district because AAP experienced a chilling effect here.  *See, e.g.*, *Media Matters for Am. v. Paxton*, 732 F. Supp. 3d 1, 27 (D.D.C.), *aff'd*, 138 F.4th 563 (D.C. Cir. 2024); *Myers v.*

---

[3] Neither *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), nor *John Crane, Inc. v. Shein Law Center Limited*, 891 F.3d 692 (7th Cir. 2018), is to the contrary.  In both, the service of legal documents was the only activity alleged to be directed at the forum State—and in *John Crane*, the documents at issue were not even served in the State.  891 F.3d at 695. That situation is a far cry from this one, where Uthmeier's direct service of the Amended Complaint is but one tile in a mosaic of Illinois-directed activity.

*Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). That is because "suppression itself is a more 'substantial' event than the decision to suppress," and the plaintiff "suffers harm" in the venue "where the speech would have taken place." *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009).

Uthmeier contends that venue is improper in Illinois because courts should "focus on relevant activities of the defendant, not of the plaintiff." Dkt. 2-1 ("Mot.") 11 (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). But *Woodke* does not stand for the proposition that a plaintiff's activities are irrelevant to the venue analysis. There, the plaintiff's venue argument turned solely on having resided in the district at the time the defendant allegedly infringed his trademark. 70 F.3d at 985. The Eighth Circuit held that the plaintiff's residence alone was not sufficient in the absence of "any other evidence that a substantial part of the events giving rise to his Lanham Act claim occurred in the forum." *Id.* But here, there is ample evidence that a substantial part of the events giving rise to AAP's claim occurred in the Northern District of Illinois. As explained above, the harmful effects of Uthmeier's retaliatory campaign are felt in the district. *See supra* pp. 11–12. And a substantial

16

portion of the allegations Uthmeier has leveled at AAP publicly and in litigation turn on "what AAP knew and its internal decisionmaking process," much of which occurred in Illinois.  Op. 27.

Uthmeier's other arguments are no more persuasive.  Uthmeier continues to rely on *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979), but *Leroy* interpreted a superseded version of the venue statute, which limited venue to the district "in which the claim arose."  *Id.* at 184.  Because the operative statute permits venue to lie wherever a "substantial part of the events or omissions" occurred, *Leroy*'s holding "is of limited, if any, significance now."  14D *Wright & Miller's Federal Practice & Procedure* § 3802 (4th ed. 2026).  And adopting the district court's venue analysis does not "render [Section] 1391(b)'s other provisions largely superfluous."  Mot. 12.  Congress deliberately wrote Section 1391(b)'s provisions as disjunctive alternatives.  The presence of overlap is by design and does not make any section "superfluous."  *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56–57 (2013) (discussing Section 1391(b)'s structure).  Venue is proper.

17

## C.    *Younger's* Bad Faith Exception Applies.

In a final attempt to reinstate the retaliatory action, Uthmeier insists that *Younger* abstention bars the district court's injunction, arguing that "any injunction issued by the [federal courts] to the [state courts] affronts the State's sovereignty." Mot. 12–19. That sweeping contention is contrary to Seventh Circuit precedent. The district court correctly applied this Court's precedent and made detailed factual findings to conclude that abstention is not warranted because Uthmeier brought his enforcement action in bad faith.

The Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), expressly preserved an opportunity for "federal intervention" where, as here, a state proceeding is "brought in bad faith [or] to harass." *Id.* at 56–57 (Brennan, J., concurring); *accord id.* at 53–54 (majority opinion). To invoke *Younger*'s bad-faith exception, a plaintiff "must allege specific facts to support an inference of bad faith," rather than offering "a mere allegation and … conclusory finding[s]." Op. 30 (citing *Collins v. Kendall Cnty.*, 807 F.2d 95, 98 (7th Cir. 1986)). The district court correctly concluded that AAP cleared that high bar by pointing to deficiencies in the underlying enforcement action, identifying

18

compromising statements from Uthmeier and others, and recounting Uthmeier's gamesmanship throughout the state enforcement action.

Uthmeier's critiques of the district court's legal framework and its reliance on AAP's "bad faith" evidence fall short. To start, Uthmeier contends that a bad faith finding requires "*repeated* prosecutions to harass an individual or deter his conduct." Mot. 14. But that contention finds no support in *Younger* itself, which declined abstention in the absence of a "suggestion that this single prosecution … is brought in bad faith *or* is only one of a series of repeated prosecutions to which he will be subjected." 401 U.S. at 49 (emphasis added). And this Court has never adopted such a rule. Indeed, in *Mulholland v. Marion County Election Board*, 746 F.3d 811 (7th Cir. 2014), the Court explained that a single attempt to enforce a previously enjoined law against a new target was so meritless as to "shave[] very close to harassment or bad faith prosecution" under *Younger*. *Id.* at 818; *see also, e.g.*, *Air Evac EMS v. McVey*, 37 F.4th 89 (4th Cir. 2022) (finding extraordinary circumstances in single insurance enforcement action); *Pettway v. Marshall*, No. 5:19-CV-1073-KOB, 2019 WL 3752475 (N.D. Ala. Aug. 8, 2019) (finding bad faith in single civil forfeiture proceeding). Uthmeier suggests (at 14–15) that comity

19

demands that a defendant defend itself in a state proceeding, even when brought in bad faith. But this Court rejected that notion long ago, explaining in *Collins* that "[t]he harm posed by bad faith prosecution is both immediate and great, and defending against the state proceedings would not be an adequate remedy at law because it would not ensure protection of the plaintiff's federal constitutional rights." 807 F.2d at 98.

Turning to the district court's findings of bad faith, Uthmeier errs in faulting the district court for considering: (1) the merits of the Florida enforcement action; (2) his public comments; and (3) his failure to serve the initial complaint on AAP until months after filing suit. Mot. 16.

The district court correctly considered the merits of the enforcement action and determined it is baseless. Courts routinely analyze the merits of underlying claims to evaluate whether, under *Younger*, a case was brought in bad faith. *See, e.g.*, *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1092–96 (5th Cir. 2023); *cf. Nieves v. Bartlett*, 587 U.S. 391, 406 (2019) (conducting similar analysis for First Amendment retaliation claim). And the district court's analysis was sound. For example, all of the State's claims are necessarily premised on the notion that AAP's speech and activities were "commercial" or affected a commercial market, but

20

AAP is a non-profit that does not sell any form of gender-affirming care. Op. 39–42. The district court thus concluded that Uthmeier's commercial-speech theory was "as weak as they come," and that Uthmeier could have "no objectively reasonable expectation of success." *Id.* at 39–42. Nor does Uthmeier rebut—or acknowledge—the district court's conclusion that his complaint is replete with factual misrepresentations, including "false" representations about AAP's stance on treatments for children at different ages. *Id.* at 42–43. As the district court reasoned, these and other misleading allegations "extend[ed] beyond the norm of vigorous representation," *id.* at 42–43, 49–50, further supporting the conclusion that the AG's action was brought in bad faith. Uthmeier offers little to no response.

Uthmeier's reliance on *Yelp Inc. v. Paxton*, 137 F.4th 944 (9th Cir. 2025), to discredit the relevance of his public statements is misplaced. In *Yelp*, the Ninth Circuit determined the Texas Attorney General's public statements on the Yelp CEO's personal views were insufficient to trigger *Younger*'s bad-faith exception. *Id.* at 956. But there, unlike here, "the enforcement action itself" was "not facially meritless." *Id.* And Uthmeier's statements do not stand alone, but are part of a pattern of false

21

and misleading representations in his pleadings and gamesmanship in pursuing his claims.

Uthmeier attempts to justify his months-delayed service by arguing that, because service complied with the Florida Rules of Civil Procedure, it cannot be considered evidence of "bad faith." Mot. 18–19. That ignores the district court's actual reasoning—that a delay in service combined with an amended complaint adding new and serious claims "up[s] the ante," and can be viewed as either innocent actions or as evidence of bad faith. Op. 55. The district court correctly concluded that, viewed against the backdrop of baseless underlying claims and false representations about AAP, Uthmeier's litigation behavior was suggestive of bad faith. *Id.* This is consistent with *Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023). There, Judge Willett explained that the district court was "well within its discretion" to make "unfavorable inference[s]" about a prosecutor's post-indictment delay in pursuing charges in light of the other evidence that the prosecutor was acting with retaliatory animus. *Id.* at 1092. The same is true here.

Because the district court faithfully followed this Court's precedent and engaged in a fact-intensive inquiry to conclude that AAP offered

22

"specific facts to support an inference of bad faith," *Collins*, 807 F.2d at 98, Uthmeier is unable to establish a likelihood of success on the merits.

## II.    Uthmeier Has Not Established He Would Suffer Irreparable Harm Absent a Stay.

Uthmeier has also failed to establish that he would suffer any irreparable harm if the preliminary injunction remains in place while this appeal runs its course.  Judging by Uthmeier's own actions, there is nothing urgent about his need to press ahead with his retaliatory enforcement action.  He waited years after AAP made the statements that form the crux of his allegations to initiate his suit.  And even after filing his suit, Uthmeier waited months to serve the complaint on AAP, instead engaging in an extended press tour to publicize his suit and level retaliatory verbal attacks at AAP rather than pushing ahead with the litigation.  The Florida suit remains at a preliminary stage and Uthmeier would suffer no harm from a stay of that action pending disposition of this appeal.  Moreover, Florida has prohibited the types of gender-affirming care that Uthmeier takes issue with, *see* ECF No. 31 at 5 (discussing Florida law penalizing physicians who provide gender-affirming care to minors), such that any claim of harm from the 2018 Policy Statement is backward looking and would not be affected by a stay.

23

On the other side of the ledger, AAP would suffer irreparable harm if the Court were to enter a stay. The entire point of this action, and of the district court's preliminary injunction, is to stop Uthmeier and those acting in concert with him from continuing to inflict First Amendment harms on AAP through his retaliatory campaign. Staying the injunction would reopen the floodgates to retaliation, causing additional First Amendment harm that is inherently irreparable. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The events of this week demonstrate as much: After the district court entered the injunction, Uthmeier filed a "Notice" in the Florida court, advising the court of the injunction, engaging in a broadside attack on AAP and the Illinois district court, and encouraging the Florida court to decide motions pending before it even with the preliminary injunction in place. *See* ECF No. 47-1. A stay would only encourage Uthmeier to ramp up his campaign against AAP's protected expressive activity and existence.

Because Uthmeier would suffer no irreparable harm from leaving the injunction in place while the appeal proceeds and AAP would suffer

24

guaranteed irreparable harm if a stay is granted, this Court should deny Uthmeier's motion.

## III. The Remaining Factors Weigh Against a Stay.

Uthmeier acknowledges that the Court need not consider the balance of equities and the public interest unless he establishes a likelihood of success on the merits and a threat of irreparable harm absent a stay. Mot. 6 (citing *Trump*, 155 F.4th at 936). Because he has failed to establish either, the Court need not consider those additional factors. But in any event, both the equities and the public interest strongly favor preserving the injunction to protect AAP's First Amendment freedoms.

This Court and others have routinely recognized that "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). It is well established that the public has a compelling interest in the robust exchange of ideas. *See, e.g.*, *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting). Safeguarding expressive rights benefits not only the speaker, but society as a whole. That is particularly true where, as here, the speech is designed to equip medical practitioners to

25

provide evidence-backed care to their patients.

Uthmeier does not contend that the district court's First Amendment retaliation ruling was wrong. Here, just like in the district court, "Uthmeier offer[ed] no reasons beyond the theories in the state court complaint to argue that AAP's speech is not protected by the First Amendment," failed to contest that "those theories are deeply flawed," and did not dispute that "AAP's speech was the but-for cause of the state court lawsuit." Op. 57. Because the public interest "is not served by a campaign of petty harassment," *Wallace v. Benware*, 67 F.3d 655, 663 (7th Cir. 1995), Uthmeier's stay motion should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny the motion to stay the preliminary injunction pending appeal.

June 11, 2026

Respectfully submitted,

/s/ *Sarah E. Harrington*

Sarah E. Harrington
Amber M. Charles
Paul Killebrew
Alexandra J. Widas
Kendall T. Burchard
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Counsel for Plaintiff-Appellee*
*American Academy of Pediatrics*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on June 11, 2026, to all counsel of record.


June 11, 2026                    /s/ *Sarah E. Harrington*
                                 Sarah E. Harrington

28

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,192 words.  This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

June 11, 2026

/s/ *Sarah E. Harrington*
Sarah E. Harrington