No. 26-2238

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

AMERICAN ACADEMY OF PEDIATRICS,

*Plaintiff-Appellee,*

v.

JAMES UTHMEIER, ATTORNEY GENERAL
OF THE STATE OF FLORIDA, in his official capacity,

*Defendant- Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, No. 1:26-cv-02401-MFK
The Honorable Matthew F. Kennelly, Judge

**BRIEF OF INDIANA, 21 OTHER STATES, AND THE ARIZONA
LEGISLATURE AS AMICI CURIAE IN SUPPORT OF DEFENDANT-
APPELLANT'S MOTION FOR STAY PENDING APPEAL**

| | |
|---|---|
| | THEODORE E. ROKITA<br>Attorney General of Indiana |
| Office of the Attorney General<br>IGC South, Fifth Floor<br>302 W. Washington Street<br>Indianapolis, IN 46204<br>(317) 232-0709<br>James.Barta@atg.in.gov | JAMES A. BARTA<br>Solicitor General<br><br>LAUREN R. LABAUMBARD<br>Deputy Attorney General |

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

As governmental parties, amici curiae are not required to file a disclosure statement. Fed. R. App. P. 26.1(a); 7th Cir. R. 26.1(a).

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION AND INTEREST OF AMICI CURIAE ........................................... 1

ARGUMENT ............................................................................................................. 2

I.     The District Court Twisted *Younger* Beyond Recognition ............................... 2

II.    Embracing The District Court's Theory Under *Younger*'s Bad-Faith
Exception Would Have Far Reaching Consequences ....................................... 7

CONCLUSION ......................................................................................................... 9

ADDITIONAL SIGNATORIES ................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**

*Collins v. Kendall Cnty.*,
807 F.2d 95 (7th Cir. 1986) ................................................................................ 3

*Commonwealth v. Character Technologies, Inc.*,
No. 26-CI-00029 (Ky. Cir. Ct. Jan. 8, 2026) ....................................................... 7

*Crenshaw v. Sup. Ct. of Ind.*,
170 F.3d 725 (7th Cir. 1999) .............................................................................. 3

*Diamond "D" Const. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002) ............................................................................... 3

*Grandco Corp. v. Rochford*,
536 F.2d 197 (7th Cir. 1976) .............................................................................. 3

*Harrison v. Lee Auto Holdings, Inc.*,
295 So. 3d 857 (Fla. Dist. Ct. App. 2020) .......................................................... 5

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) ................................................................................ 3, 4, 7, 9

*Indiana v. Roblox Corp.*,
No. 29D01-2605-PL-005581 (Ind. Super. Ct. May 6, 2026) ................................ 7

*Indiana v. TikTok, Inc.*,
No. 02D02-2212-PL-000400 (Ind. Super. Ct. Dec. 7, 2022) ................................ 7

*K.C. v. Individual Members of Med. Licensing Bd. of Ind.*,
121 F.4th 604 (7th Cir. 2024) ............................................................................. 6

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) ................................................................................ 2, 3, 5, 7

*Moore v. Sims*,
442 U.S. 415 (1979) ........................................................................................... 4

*Nader v. Keith*,
385 F.3d 729 (7th Cir. 2004) .............................................................................. 8

## CASES [CONT'D]

*Netflix, Inc. v. Babin*,
88 F.4th 1080 (5th Cir. 2023) ................................................................ 4

*O'Keefe v. Chisholm*,
769 F.3d 936 (7th Cir. 2014) ................................................................ 3

*People v. Chrome Holding Co.*,
No. CGC-26-636891 (Cal. Super. Ct. May 27, 2026) ............................ 7

*Perez v. Ledesma*,
401 U.S. 82 (1971) ................................................................................ 3

*State v. Albertsons*,
No. 26-2-13757-9 SEA (Wash. Super. Ct. Apr. 27, 2026) ..................... 7

*State v. Institutional S'holder Servs., Inc.*,
No. 471-03459-2026 (Tex. Dist. Ct. May 20, 2026) .............................. 7

*State v. Meta Platforms, Inc.*,
No. 26-0393 (Tex. Dist. Ct. May 21, 2026) .......................................... 7

*Suris v. Gilmore Liquidating, Inc.*,
651 So. 2d 1282 (Fla. Dist. Ct. App. 1995) .......................................... 5

*Yelp Inc. v. Paxton*,
137 F.4th 944 (9th Cir. 2025) ...................................................... 3, 5, 6, 7

*Younger v. Harris*,
401 U.S. 37 (1971) ................................................................................ 2

## OTHER AUTHORITIES

Indiana Attorney General Todd Rokita, *Attorney General Todd Rokita
launches litigation against TikTok to protect children and combat
threats from China*, State of Ind. (Dec. 7, 2022),
https://events.in.gov/event/attorney_gen-
eral_todd_rokita_launches_litigation_against_tiktok_to_pro-
tect_children_and_combat_threats_from_china ................................... 8

Nebraska Attorney General Mike Hilgers, *Nebraska Attorney General
Hilgers Files Lawsuit Against Roblox for Enabling Child Exploita-
tion and Deceptive Safety Practices*, Neb. Att'y Gen. (Mar. 4, 2026),
https://ago.nebraska.gov/nebraska-attorney-general-hilgers-files-
lawsuit-against-roblox-enabling-child-exploitation-and ....................... 8

**OTHER AUTHORITIES [CONT'D]**

New York Attorney General Letitia James, *Attorney General James Sues Payday Lending Companies for Exploiting Workers with Illegal Loans*, N.Y. State Att'y Gen. (Apr. 14, 2025), https://ag.ny.gov/press-release/2025/attorney-general-james-sues-payday-lending-companies-exploiting-workers-illegal ........................................... 8

Vermont Attorney General Charity Clark, *Attorney General Clark Sues Meta for Instagram's Harm to Teens' Mental Health*, Vt. Att'y Gen. (Oct. 24, 2023), https://ago.vermont.gov/blog/2023/10/24/attorney-general-clark-sues-meta-instagrams-harm-teens-mental-health .......................... 8

**INTRODUCTION AND INTEREST OF AMICI CURIAE**

Every year, States bring dozens upon dozens of lawsuits to protect their citizens from unfair, misleading, deceptive, abusive, or otherwise improper conduct—from consumer-protection actions over product safety to actions against social-media platforms for misleading and deceptive representations. Refer to the press releases and social media posts of any state Attorney General for example after example.

Sometimes, of course, targets of state consumer-protection actions vehemently disagree about an enforcement action's merit or the challenged conduct's social utility. Targets may believe their conduct conforms to state law. Or targets may believe their conduct to be socially beneficial. Or, as in this case, targets may have theories as to why the First Amendment supposedly puts their conduct beyond state law.

But the ease with which disagreements can arise is precisely why they do not—or at least should not—furnish a reason to displace state courts from their proper constitutional role in resolving cases arising under state law. Federal jurisdiction would soon swallow state authority if a federal court could seize control of a state-court action merely because it might make a different decision than a state court.

Yet the decision on appeal would unleash an unbounded role for the federal judiciary. Remarkably, a federal district court sitting in Illinois reached across the country to enjoin the Florida Attorney General from prosecuting an action in Florida against the American Academy of Pediatrics (AAP) for allegedly deceptive representations that harmed Florida citizens and violated Florida law. And the district court asserted that the Attorney General could be haled into Illinois for discharging his

duties in Florida merely because he hired someone to serve AAP in the place it was legally required to be served and for knowing a lawsuit against an Illinois entity would have effects felt in Illinois. Those two features combined are enough to make its decision essential reading for out-of-state companies seeking to evade state law.

What is more concerning still is that the district court articulated a theory of *Younger* abstention and its bad-faith exception that eviscerates the general rule against interfering with ongoing state-court proceedings. Without analyzing how Florida courts would view the matter, the court characterized some of the most ordinary conduct imaginable—pursuing state-law claims that the defendant disputes, serving a complaint within the time prescribed by state law, and voicing the conviction that allegedly unlawful conduct is harmful—as evidence of bad faith.

The district court's decision defies settled doctrine and federalism principles alike. Left unchecked, its logic could displace state courts from their proper role in resolving state-court actions based on state law in a wide variety of disputes. *Amici* urge this Court to stay the decision to ensure that it does not become a template for halting state proceedings and hamstringing States' ability to protect their citizens.

## ARGUMENT

### I.    The District Court Twisted *Younger* Beyond Recognition

*Younger v. Harris*, 401 U.S. 37 (1971), stands for an important principle: "[P]roper respect" for States as sovereigns requires that state courts be left free to perform their functions where States bring criminal or civil actions to enforce their laws. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431

(1982) (citation omitted). "Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances" is federal interference with ongoing state-court proceedings appropriate. *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

The bad-faith exception is a "narrow" one. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975). The mere fact that a State could lose an enforcement action, or that a "state statute is unconstitutional," "does not justify federal relief." *Grandco Corp. v. Rochford*, 536 F.2d 197, 202 (7th Cir. 1976); *see Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999); *Collins v. Kendall Cnty.*, 807 F.2d 95, 98–99 (7th Cir. 1986). Rather, as the Supreme Court has emphasized, there must be "*proven* harassment or prosecutions undertaken in bad faith *without hope* of obtaining a valid conviction." *Perez*, 401 U.S. at 85 (emphasis added); *see O'Keefe v. Chisholm*, 769 F.3d 936, 940 (7th Cir. 2014) (explaining this means that "[n]o reasonable person could have thought that the proceeding would lead to a valid conviction").

That "without hope" standard is difficult to satisfy. *See, e.g.*, *Yelp Inc. v. Paxton*, 137 F.4th 944, 952 (9th Cir. 2025) (bad faith exists "when the state court action is based on a 'clearly inapplicable' law, for which 'there was never any remote chance'" of a valid conviction) (citation omitted)); *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002) (bad faith exists "only when the state proceeding is brought with no legitimate purpose"); *Collins*, 807 F.2d at 101 (bad faith requires "state officials [to be] using or threatening to use prosecutions, regardless of their outcome, as instrumentalities for the suppression of speech" (cleaned up)). As the

3

Fifth Circuit has noted, courts should "never [be] eager to find bad faith, particularly of public servants." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1091 (5th Cir. 2023).

But the district court here offered a theory of "bad faith" so expansive that virtually any party with a half-decent defense to a state-court action can sidestep *Younger*. To start, the court criticized the Florida Attorney General for pursuing state-law claims against AAP that, in its view, had "a significant weakness." Dkt. 35 at 39. But *even if* the district court was correct on that assessment—an issue the parties are actively debating in state court—a "weak[]" claim is not the same as a "hope[less]" one. No Florida court has yet ruled that the Attorney General's claims are utterly without merit under Florida law, and it very well may turn out that the Attorney General will win his lawsuit in state court. But the district court did not even attempt to discern how Florida courts would apply their law (as one would expect a federal court to do in any case about state law). It did not cite a single Florida decision. Rather, this Illinois-based district court considered one factor only—its own view of what makes for a "weak[]" claim. *See* Dkt. 35 at 39–43.

The upshot of the district court's approach is that it reduces *Younger*'s bad-faith analysis to whether a federal court would countenance a state-law claim if tasked with developing state law. But that displaces state courts from their role as "the principal expositors of state law." *Moore v. Sims*, 442 U.S. 415, 429 (1979); *see Huffman*, 420 U.S. at 603 ("The seriousness of federal judicial interference with state civil functions has long been recognized by this Court."). As decision after decision has emphasized, the mere fact that a federal court believes a state-law claim to be a

4

loser does not warrant federal intervention. *See Yelp*, 137 F.4th at 953 ("Many cases applying *Younger*—and *Younger* itself—abstained from enjoining state court proceedings in the face of arguments that applying a state statute would be unconstitutional, including under the First Amendment."). Proper respect for state courts requires letting state courts determine that themselves. *See Middlesex*, 457 U.S. at 431.

Other passages from the district court's decision underscore the extent to which the district court treated *Younger*'s bad-faith exception as a license to ignore state law and to superintend the operations of state courts. For example, the court faulted the Florida Attorney General for making allegations that lacked supporting "citations" or, in the court's view, sufficient "nuance." Dkt. 35 at 46–47. But the court cited no rule of Florida procedure that requires citations in a complaint or makes insufficient "nuance" ground for dismissal. Indeed, the court ignored Florida decisions indicating that whether AAP misled consumers with statements about puberty blockers—such as AAP's claim that administering puberty blockers to disrupt a child's normal development is "reversible," Dkt. 35 at 47—is a question for a jury. *See, e.g.*, *Suris v. Gilmore Liquidating, Inc.*, 651 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1995); *Harrison v. Lee Auto Holdings, Inc.*, 295 So. 3d 857, 863 (Fla. Dist. Ct. App. 2020). The district court improperly arrogated to itself the task of applying state law.

None of the other "evidence" the district court cited can rescue its bad-faith analysis—indeed, the banality of conduct betrays the extent to which its decision threatens to explode *Younger*'s bad-faith exception. One of the other considerations on which the court placed significant weight was social-media posts that (it thought)

show the Florida Attorney General has "convictions against gender-affirming care." Dkt. 35 at 52. But the court never explained why it is a problem for a public official to believe that minors should not be subjected to the gender-transition procedures or to communicate that view to constituents. Nor is an explanation apparent. This Court, after all, has held that it is "legitimate" for state officials to "protect[]" minors from the "novel and uncertain medical treatment" that AAP promotes. *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 627 (7th Cir. 2024).

And even if this Court had not already recognized that the Florida Attorney General's views are legitimate, holding them would not be disqualifying. As the Ninth Circuit has explained, "state Attorneys General and other state officials are entitled to have enforcement priorities and policy positions" and to act consistent with them. *Yelp*, 137 F.4th at 955–56. If "an enforcement action consistent with [a] policy direction were enough to establish a retaliatory motive, state courts would regularly be stripped of their authority at the hands of federal injunctions—directly contrary to *Younger*'s overarching message of respect for state courts." *Id.* at 956. Yet the district court disregarded that principle by equating "bad faith" with bringing an enforcement action that implicates a "sensitive matter on which people disagree." *Id.*

Perhaps most confounding of all, the district court characterized some of the most routine conduct conceivable—namely, serving a state court complaint within the time allowed by state law and amending the complaint in accordance with state law—as evidence of bad faith. *See* Dkt. 35 at 52–53. But a state's enforcement of its own law to protect its citizens in a manner that state law allows does not equate to

6

bad faith. *See Huffman*, 420 U.S. at 604–05. If the law were otherwise, nothing would be left of *Younger*. Virtually any party who thought a state enforcement action could have been litigated differently (*i.e.*, more favorably to that party) would be able to claim bad faith. Embracing the district court's extraordinary rationales for reaching across the country to interfere with an ongoing state enforcement action "would trivialize the principles of comity and federalism." *Middlesex*, 457 U.S. at 437.

## II.    Embracing The District Court's Theory Under *Younger*'s Bad-Faith Exception Would Have Far Reaching Consequences

As should be apparent from the discussion above, the district court's misapprehension of *Younger* threatens to upend the federalist structure and restrict States' ability to protect their citizens. State Attorneys General from both political parties regularly initiate civil-enforcement actions under consumer protection, licensing, and antitrust laws to protect people from harm.[1] Many implicate "sensitive matter[s]" about which people disagree. *Yelp*, 137 F.4th at 955–56. Some involve untested applications of state law or present novel First Amendment issues. And of course state Attorneys General from both political parties—many of whom are elected officials— sometimes express forceful opinions about companies accused of harming consumers

---

[1] *See, e.g.*, *Indiana v. TikTok, Inc.*, No. 02D02-2212-PL-000400 (Ind. Super. Ct. Dec. 7, 2022); *Indiana v. Roblox Corp.*, No. 29D01-2605-PL-005581 (Ind. Super. Ct. May 6, 2026); *People v. Chrome Holding Co.*, No. CGC-26-636891 (Cal. Super. Ct. May 27, 2026); *Commonwealth v. Character Technologies, Inc.*, No. 26-CI-00029 (Ky. Cir. Ct. Jan. 8, 2026); *State v. Institutional S'holder Servs., Inc.*, No. 471-03459-2026 (Tex. Dist. Ct. May 20, 2026); *State v. Meta Platforms, Inc.*, No. 26-0393 (Tex. Dist. Ct. May 21, 2026); *State v. Albertsons*, No. 26-2-13757-9 SEA (Wash. Super. Ct. Apr. 27, 2026).

and breaking state laws.[2] Thus, if the considerations that the district court cited here are enough to establish bad faith, federal courts will soon find themselves asked to oversee all manner of state-court litigation. Any party able to argue a claim is "weak[]" or that a state Attorney General expressed opinions too strongly will be able to sidestep *Younger*'s command of deference to state courts.

The resulting harms would go well beyond damage to state sovereignty and lack of respect for state courts. When federal district courts fail to respect *Younger*'s limits, they effectively immunize parties from state regulatory action. *See Nader v. Keith*, 385 F.3d 729, 731–32 (7th Cir. 2004) (observing that a defendant facing an

---

[2] For example, in seeking to hold TikTok accountable for deceiving Indiana consumers, the Indiana Attorney General explained that the company had unleashed a "malicious" app on "unsuspecting Indiana consumers." Indiana Attorney General Todd Rokita, *Attorney General Todd Rokita launches litigation against TikTok to protect children and combat threats from China*, State of Ind. (Dec. 7, 2022), https://events.in.gov/event/attorney_general_todd_rokita_launches_litigation _against_tiktok_to_protect_children_and_combat_threats_from_china. In suing Meta, the Vermont Attorney General accused the company of "knowingly design[ing] and develop[ing] Instagram features to exploit teens' vulnerabilities to maximize revenue." Vermont Attorney General Charity Clark, *Attorney General Clark Sues Meta for Instagram's Harm to Teens' Mental Health*, Vt. Att'y Gen. (Oct. 24, 2023), https://ago.vermont.gov/blog/2023/10/24/attorney-general-clark-sues-meta-insta-grams-harm-teens-mental-health. In suing Roblox, the Nebraska Attorney General observed that the company had violated "the trust of families, all while creating a playground for predators and exposing children to graphic and dangerous content." Nebraska Attorney General Mike Hilgers, *Nebraska Attorney General Hilgers Files Lawsuit Against Roblox for Enabling Child Exploitation and Deceptive Safety Practices*, Neb. Att'y Gen. (Mar. 4, 2026), https://ago.nebraska.gov/nebraska-attorney-general-hilgers-files-lawsuit-against-roblox-enabling-child-exploitation-and. And when suing payday lending companies, the New York Attorney General described them as "predatory" and denounced their conduct as "downright shameful." New York Attorney General Letitia James, *Attorney General James Sues Payday Lending Companies for Exploiting Workers with Illegal Loans*, N.Y. State Att'y Gen. (Apr. 14, 2025), https://ag.ny.gov/press-release/2025/attorney-general-james-sues-payday-lending-companies-exploiting-workers-illegal.

active state-court proceeding against him cannot run to federal court and plead a federal defense with the intent of enjoining the state-court proceeding). This case illustrates the point. Without a stay, AAP will have interfered with an action seeking to hold AAP accountable for violations of Florida law for however long this appeal takes to litigate. That would be "quite costly in terms of the interests which *Younger* seeks to protect." *Huffman*, 420 U.S. at 606.

Injunctions like the district court's also generate confusion and complexity. AAP is just one of three co-defendants in the Florida lawsuit—which asserts state antitrust and RICO claims against all three defendants—yet the injunction in this case grants relief only to AAP. Dkt. 39. That leaves the Attorney General with no clear or sensible way forward. Is he supposed to try a claim that requires proof of concerted behavior without being able to take discovery from an essential participant and proceed with a claim against it? And what is he to do if the state court—which is not bound by the injunction—refuses to stay the case as to AAP and orders him to prosecute it? These questions demonstrate why any prolonged delay from the injunction is intolerable. This Court should quickly correct the district court's error.

## CONCLUSION

This Court should stay the district court's preliminary injunction.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta

JAMES A. BARTA
Solicitor General

LAUREN R. LABAUMBARD
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South,
5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Amici Curiae*

**ADDITIONAL SIGNATORIES**

STEVE MARSHALL
Attorney General
State of Alabama

CORI MILLS
Acting Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL LABRADOR
Attorney General
State of Idaho

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
Commonwealth of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

CATHERINE L. HANAWAY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

MARTY JACKLEY
Attorney General
State of South Dakota

JONATHAN SKRMETTI
Attorney General and Reporter
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

KEITH G. KAUTZ
Attorney General
State of Wyoming

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSEN
President of the
Arizona Legislature

**CERTIFICATE OF COMPLIANCE**

1.     This document complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2)(A) and 29(a)(5) because this document contains 2,564 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.     This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

Dated: June 10, 2026                                             /s/ James A. Barta
                                                                         JAMES A. BARTA
                                                                         Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that, on June 10, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 10, 2026

/s/ James A. Barta
JAMES A. BARTA
Solicitor General


Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 W. Washington Street
Indianapolis, Indiana 46204
Telephone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov