No. 26-2238

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

AMERICAN ACADEMY OF PEDIATRICS,
*Plaintiff-Appellee,*

v.

JAMES UTHEMEIER, ATTORNEY GENERAL
OF THE STATE OF FLORIDA, in his official capacity,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois

## APPELLANT'S EMERGENCY PETITION FOR
## REHEARING EN BANC OF THE PANEL DECISION
## DENYING THE MOTION TO STAY PENDING APPEAL

JAMES UTHMEIER
 *Attorney General*

RYAN D. NEWMAN
 *Chief Deputy Attorney General*

JASON HILBORN
 *Deputy Attorney General for*
 *Civil Enforcement*

DAVID M.S. DEWHIRST
 *Solicitor General*

JASON J. MUEHLHOFF
 *Chief Deputy Solicitor General*

SAMUEL F. ELLIOTT
 *Deputy Solicitor General*
VINCENT LI
 *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
david.dewhirst@myfloridalegal.com

*Counsel for Florida Attorney General James Uthmeier*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................ii

FEDERAL RULE OF APPELLATE PROCEDURE 40(B)(2) STATEMENT .............. 1

STATEMENT OF THE CASE.................................................................................... 2

ARGUMENT .............................................................................................................. 3

    I.    The Attorney General Is Likely to Succeed on Appeal.................................... 3

        A.    *Younger* demands abstention......................................................... 4

        B.    The district court lacks personal jurisdiction. ............................... 10

        C.    Venue is improper. .......................................................................... 13

    II.    The Remaining Stay Factors Favor Defendant........................................... 13

CONCLUSION......................................................................................................... 15

CERTIFICATE OF SERVICE................................................................................. 16

CERTIFICATE OF COMPLIANCE........................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,*
751 F.3d 796 (7th Cir. 2014) ............................................................. 1, 10, 12

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
486 U.S. 492 (1988) ............................................................................... 8

*Am. Soc'y. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.,*
456 U.S. 556 (1982) ............................................................................... 6

*Ariel Invs., LLC v. Ariel Cap. Advisors LLC,*
881 F.3d 520 (7th Cir. 2018) .............................................................. 12

*Calder v. Jones,*
465 U.S. 783 (1984) ............................................................................. 11

*Collins v. Kendall Cnty.,*
807 F.2d 95 (7th Cir. 1986) .............................................................. 1, 5

*Defense Distributed v. Grewal,*
971 F.3d 485 (5th Cir. 2020) .............................................................. 13

*Dombrowski v. Pfister,*
380 U.S. 479 (1965) ........................................................................... 1, 5

*Ford-Reyes v. Progressive Funeral Home,*
418 F. Supp. 3d 286 (N.D. Ill. 2019) .................................................. 13

*Grandco Corp. v. Rochford,*
536 F.2d 197 (7th Cir. 1976) ............................................................ 1, 5

*Hayes v. Bd. of Educ. of the City of Chicago,*
176 F.4th 994 (7th Cir. 2026) ............................................................ 12

*Illinois v. Trump,*
155 F.4th 929 (7th Cir. 2025) .............................................................. 3

*Janmark, Inc. v. Reidy,*
132 F.3d 1200 (7th Cir. 1997) ............................................................ 11

*John Crane, Inc. v. Shein L. Ctr., Ltd.,*
891 F.3d 692 (7th Cir. 2018) ........................................................... 1, 10

*Ken-N.K., Inc. v. Vernon Twp.,*
   18 F. App'x 319 (6th Cir. 2001) ................................................................ 5

*Leroy v. Great Western United Corp.,*
   443 U.S. 173 (1979) ................................................................................ 13

*Maryland v. King,*
   567 U.S. 1301 (2012) ............................................................................... 14

*Media Matters for America v. Paxton,*
   138 F.4th 563 (D.C. Cir. 2025) .............................................................. 13

*Nader v. Keith,*
   385 F.3d 729 (7th Cir. 2004) ................................................................... 4

*Saenz v. Roe,*
   526 U.S. 489 (1999) ................................................................................... 4

*Seila L. LLC v. CFPB,*
   591 U.S. 197 (2020) ................................................................................... 4

*Sekerez v. Supreme Ct. of Indiana,*
   685 F.2d 202 (7th Cir. 1982) ............................................................... 1, 5

*Starr v. Fed. Aviation Admin.,*
   589 F.2d 307 (7th Cir. 1978) ................................................................. 10

*Tindall v. Wayne Cnty. Friend of Ct., by: £Schewe,*
   269 F.3d 533 (6th Cir. 2001) ............................................................... 1, 5

*Walden v. Fiore,*
   571 U.S. 277 (2014) ......................................................................... 1, 11, 12

*Wallace v. Herron,*
   778 F.2d 391 (7th Cir. 1985) ................................................................. 11

*Wilk v. Am. Med. Ass'n,*
   895 F.2d 352 (7th Cir. 1990) ................................................................... 7

*Yelp Inc. v. Paxton,*
   137 F.4th 944 (9th Cir. 2025) ............................................................. 8, 9

*Younger v. Harris,*
   401 U.S. 37 (1971) ....................................................................... 1, 4, 5, 15

**Statutes**

28 U.S.C. § 1391(b)(2) ............................................................................ 13
Fla. Stat. § 456.52 .................................................................................. 15
Fla. Stat. § 501.203 .................................................................................. 7
Fla. Stat. § 817.40 .................................................................................... 7

**Rules**

Fla. R. Civ. P. 1.070 ................................................................................. 9
Fla. R. Civ. P. 1.190 ................................................................................. 9

**Treatises**

Erwin Chemerinsky, *Federal Jurisdiction* § 13.4 (3d ed.1999) ................................... 5

# FEDERAL RULE OF APPELLATE PROCEDURE 40(B)(2) STATEMENT

**A.** The Panel Decision's *Younger* abstention analysis conflicts with all of this Court's prior decisions on that subject, including *Grandco Corp. v. Rochford*, 536 F.2d 197, 204 (7th Cir. 1976), *Sekerez v. Supreme Court of Indiana*, 685 F.2d 202, 208 (7th Cir. 1982), and *Collins v. Kendall County*, 807 F.2d 95, 101 (7th Cir. 1986).  The Panel Decision's personal jurisdiction analysis conflicts with *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014), and *John Crane, Inc. v. Shein Law Center, Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018).

**B.** The Panel Decision's *Younger* abstention analysis conflicts with the Supreme Court's decisions in *Dombrowski v. Pfister*, 380 U.S. 479, 487–88 (1965), and *Younger v. Harris*, 401 U.S. 37, 44 (1971).  The Panel Decision's personal jurisdiction analysis conflicts with *Walden v. Fiore*, 571 U.S. 277, 287–88 (2014).

**C.** The Panel Decision's *Younger* abstention analysis conflicts with the Sixth Circuit's decision in *Tindall v. Wayne County Friend of Court, by: £Schewe*, 269 F.3d 533, 539 (6th Cir. 2001).

**D.** The proceeding involves questions of exceptional importance:

- Does the bad-faith exception to the *Younger* abstention doctrine apply outside the circumstances presented in *Dombrowski*?  If so, on what basis may federal courts infer subjective bad faith?

- When do injuries suffered by the plaintiff in its home state qualify as jurisdictionally relevant contacts for specific personal jurisdiction?

- Is the judicial district in which the plaintiff experienced injury a proper venue under 28 U.S.C. § 1391(b)(2)?

**STATEMENT OF THE CASE**

Yesterday, a panel of this Court "inflict[ed] a grievous blow to federalism." CA7-ECF 20 at 27 (Scudder, J., dissenting).

In December 2025, the Florida Attorney General initiated an enforcement action in Florida state court against three medical associations: the World Professional Association for Transgender Health (WPATH), the Endocrine Society, and the American Academy of Pediatrics (AAP). NDIL-ECF 1-2. The Enforcement Action brings claims under the Florida Antitrust Act, the Florida Unfair and Deceptive Trade Practices Act, and the Florida Racketeer Influenced and Corrupt Organization Act. NDIL-ECF 21-1. It alleges that the medical associations delivered economic benefits to their members by creating biased "standards of care" and disseminating false and misleading statements that identified "gender-affirming care"—i.e., social transitioning, puberty blockers, cross-sex hormones, and breast and genital surgeries—as "medically necessary" to treat pediatric gender dysphoria. *Id.* In reality, no credible evidence has ever supported that "gender-affirming care" mitigates gender dysphoria, and internal leaks and litigation discovery have revealed that the associations' claims were motivated by political and pecuniary interests. *Id.*

Disregarding the Florida court's ability to consider its defenses, AAP "turned to federal court for relief." CA7-ECF 20 at 28 (Scudder, J., dissenting). AAP filed this suit in the Northern District of Illinois and obtained an order preliminarily enjoining the Attorney General "from pursuing its Enforcement Action against AAP." NDIL-ECF 39 at 2. The Attorney General appealed and filed an Emergency Motion

2

for Stay Pending Appeal. CA7-ECF 2-1. Yesterday (June 22), a panel of this Court denied the motion. CA7-ECF 20.

The dissent noted the dire consequences of the Panel Decision's error. "Make no mistake about the legal magnitude of what is at stake here":

> [T]he majority today invokes a narrow exception—not applied by the Supreme Court since 1965—to permit a federal court in Illinois to enjoin the Florida Attorney General from enforcing Florida law in a Florida state court. The decision licenses federal intrusion and casts a vote of no confidence in the Florida judiciary . . . . The implications are grave.

*Id.* at 27, 35 (Scudder, J, dissenting).

Indeed.

This Court, en banc, should heed the dissent's warning, grant this petition to review the Panel Decision, and stay the preliminary injunction.

## ARGUMENT

A party moving to stay an injunction pending appeal must show "(1) a likelihood of success on the merits, and (2) a threat of irreparable harm absent a stay." *Illinois v. Trump*, 155 F.4th 929, 936 (7th Cir. 2025). If the movant makes this showing, this Court considers "(3) the balance of harms" and "(4) the public interest." *Id.* (quotation omitted). Every factor favors a stay.

### I. The Attorney General Is Likely to Succeed on Appeal.

The Attorney General will likely succeed on the merits because AAP faces three "insurmountable jurisdictional barriers": the *Younger* abstention doctrine, personal jurisdiction, and venue. CA7-ECF 20 at 30 (Scudder, J, dissenting).

### A. *Younger* demands abstention.

The Framers created a national government of limited powers. They didn't eliminate state governments. Far from it—they "split the atom of sovereignty," *Saenz v. Roe*, 526 U.S. 489, 504 n.17 (1999), dispersing authority among governments to mitigate "governmental power and its perils." *Seila L. LLC v. CFPB*, 591 U.S. 197, 223 (2020). Under the Constitution, the States retain full sovereignty, absent those few powers delegated exclusively to the federal government. Federalism is a nonnegotiable in our system—it's in our constitutional lifeblood.

"*Younger* gives effect to this principle." CA7-ECF 20 at 35 (Scudder, J, dissenting). Since "the beginning of this country's history," federal courts have recognized that they do not preside over state courts, and that enjoining state prosecutions would affront the notions of comity and sovereignty at the heart of "Our Federalism." *Younger*, 401 U.S. at 43–44. *Younger* reaffirmed the abstention doctrine that the Court had "repeat[ed] time and again," *id.* at 45: "If a person is believed to have violated a state law, the state has instituted a[n] … enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead that defense as a basis for enjoining the state proceeding." *Nader v. Keith*, 385 F.3d 729, 732 (7th Cir. 2004). That is precisely what AAP did here. And by blessing such conduct, "[i]t is hard to see why future state defendants will not turn to federal court whenever they think a state complaint warrants dismissal[.]" CA7-ECF 20 at 35 (Scudder, J, dissenting).

Neither the district court nor the panel majority disputed that the Enforcement Action meets the elements for *Younger* abstention. NDIL-ECF 35 at 28–29.

But they nevertheless refused to abstain, relying on the exceedingly narrow "bad-faith exception" never before applied by the Seventh Circuit and applied only once by the Supreme Court roughly 60 years ago in *Dombrowski*, 380 U.S. 479. There, a state judge had already quashed arrest warrants for lack of probable cause. *Id.* at 487–88. Despite that, the prosecutor "continu[ed] to threaten to initiate new prosecutions of appellants under the same statutes." *Younger*, 401 U.S. at 48. The defendant then sought relief in federal court. *Id.* Because the prosecutor refused to abide by the state court's decision, the Court declined to abstain. *Id.*

*Younger* later confirmed that "the cost, anxiety, and inconvenience of having to defend against a single . . . prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." *Id.* at 46. "[T]he threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single . . . prosecution." *Id.* Courts have therefore concluded that the bad faith exception applies "to only one specific set of facts: where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 324 n.2 (6th Cir. 2001) (citing Erwin Chemerinsky, *Federal Jurisdiction* § 13.4, at 806–08 (3d ed.1999)); *see also Tindall*, 269 F.3d at 539–40 (exception doesn't apply if "[t]he actions alleged to constitute evidence of bad faith on the part of the defendants . . . can all properly be challenged" in state court).

Until now, this Court vigilantly thwarted attempts to extend the bad-faith

exception beyond the circumstances presented by *Dombrowski*. *See Grandco Corp.*, 536 F.2d at 204; *Sekerez*, 685 F.2d at 208; *Collins v. Kendall Cnty.*, 807 F.2d at 101. Indeed, it had *never* applied the exception.

The Panel Decision ditched this authority, "expand[ing] the narrowest of exceptions into a gap in 'Our Federalism' that invites abuse." CA7-ECF 20 at 35 (Scudder, J., dissenting). Rather than analogizing to *Dombrowski* as this Court had done in the past, the Panel Decision endorsed the district court's "mosaic" of bad faith that bears no resemblance to *Dombrowski* at all. NDIL-ECF 35 at 55; *see also* CA7-ECF 20 at 35 (Scudder, J., dissenting) (observing that the panel majority's analysis takes the bad-faith exception "a long way from the quashed warrants and threats of repeated prosecutions in *Dombrowski*"). Specifically, the district court and panel majority divined bad faith from (1) their view that "the merits of the Florida claims against AAP appear weak," CA7-ECF 20 at 20; (2) the Attorney General's "public comments," *id.* at 22; and—stunningly—(3) the timing of the Attorney General's Amended Complaint, *id.*

Error all around. First, the panel majority's dim view of the Enforcement Action's merit is premised on the superficial and counter-precedential notion that AAP is immune from antitrust and consumer protection liability because it "is a nonprofit scientific organization that does not sell or provide gender-affirming care." *Id.* at 8. But as the dissent acknowledged, *id.* at 32 (Scudder, J., dissenting), AAP's non-profit status is not an impediment to the Enforcement Action's claims: (1) non-profit standards-setting organizations are vicariously liable under the Florida Antitrust Act

6

when their subcommittee members abuse the standards-setting process to harm competitors, *see Am. Soc'y. of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 570–71 (1982); (2) FDUTPA's definition of "trade or commerce" expressly includes "the conduct of any . . . nonprofit or not-for-profit . . . activity," Fla. Stat. § 501.203(8); and (3) the Florida RICO Act prohibits conducting an enterprise through a pattern of untrue or misleading statements "disseminated with the intent or purpose, either directly *or indirectly*," of selling services, Fla. Stat. § 817.40(5) (emphasis added). Worse, neither the district court nor the Panel engaged with *any* Florida law when assessing the strength of the Attorney General's claims against AAP.

The Panel Decision concedes that this Court's decision in *Wilk v. American Medical Association*, 895 F.2d 352 (7th Cir. 1990), proves that non-profit standards-setting organizations are subject to antitrust liability. CA7-ECF 20 at 21. But according to the Panel Decision, AAP's policy statement about pediatric gender dysphoria "do[es] not appear to have a similar boycotting effect" as the AMA's policy statement about musculoskeletal issues in *Wilk. Id.* This conclusory "distinction" speaks volumes. First, the panel simply assumes that AAP's policy statement was significantly less influential than the Amended Complaint alleges. But the parties dispute and will resolve the effect of AAP's policy statement at trial—in Florida. Neither the Seventh Circuit nor the Illinois district court have any business making themselves the factfinders. *Younger* forbids *precisely* this type of federal backseat driving. Second, the panel's conclusion directly contradicts binding Supreme Court precedent: "any agreement to exclude [a product or service] from the [association's standards] is

7

in part an implicit agreement" between the association's members "not to trade in that type of [product or service]." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 507 (1988).[1]

Next, the district court and panel majority descried bad faith in the Attorney General's public comments about AAP and "gender-affirming care." NDIL-ECF 35 at 51–52; CA7-ECF 20 at 22. Yet the Ninth Circuit recently dismissed this "public statement theory" in a strikingly similar case, *Yelp Inc. v. Paxton*, 137 F.4th 944, 955–56 (9th Cir. 2025). There, the Texas Attorney General filed "a civil enforcement action against Yelp in Texas state court" alleging that Yelp's statements about pregnancy resource centers were "false and misleading" under Texas law. *Id.* at 948–49. Yelp brought a First Amendment retaliation claim and sought a preliminary injunction in federal district court in California. *Id.* The district court abstained under *Younger*. Yelp appealed, relying on comments from the Texas Attorney General's press release as evidence of bad faith. *Id.*

The Ninth Circuit rejected this "evidence": Under Yelp's argument, state enforcement actions would become "retaliatory whenever they touch on hot-button issues." 137 F.4th at 956. While Texas's action "implicate[d] a sensitive matter on

---

[1] The parties also hotly contest *why* AAP convinced WPATH to remove age minimums for breast and genital surgeries from WPATH's Standards of Care Version 8. Yet the district court and panel majority proceeded to settle that factual controversy. AAP, they concluded, was motivated by a desire to "avoid broadly approving of surgeries for minors." CA7-ECF 20 at 22. Quite a charitable rendering, considering that it ignores evidence that AAP and the Biden administration were concerned that age minimums would *restrict* minors' access to "sex-change" surgeries. *See* NDIL-ECF No. 21-1 at ¶¶179–98, 220–27. With judges like these, who needs lawyers?

which people disagree" and the press release "used strong rhetoric," that did not make it "retaliatory within the meaning of *Younger*'s bad faith exception." *Id.* "[T]reating the commonplace stridency of prosecutorial press releases as synonymous with *Younger* bad faith would lead to federal courts enjoining state court proceedings with great regularity, contrary to the Supreme Court's direction that *Younger*'s exceptions are narrow." *Id.* The district court and panel majority erred in so doing.[2] If their analysis holds, the only way for state officials to avoid this Circuit's new bad-faith criterion is to remain silent and dispassionate—dubious even—about the alleged misconduct of defendants they seek to redress.

Lastly, AAP espies bad faith because the Attorney General "fail[ed] to prosecute its case." NDIL-ECF 4-1 at 13. No such failure occurred. Under the Florida Rules of Civil Procedure, plaintiffs have 120 days to serve their initial pleading. Fla. R. Civ. P. 1.070(j). A plaintiff may amend a pleading once as a matter of course before a responsive pleading is served. Fla. R. Civ. P. 1.190(a). The Attorney General served the Amended Complaint well before the deadline. *See* NDIL-ECF 21-1, 22-2. Compliance with Florida's rules doesn't evidence skepticism of the Amended Complaint's merits. This should be obvious, yet three federal judges airily embraced AAP's "failure to prosecute"-turned-"upping the ante" argument. NDIL-ECF 35 at 53.

In sum, AAP's "evidence" doesn't remotely satisfy its burden to present the "well-nigh irrefragable proof" necessary to overcome the presumption of good faith to

---

[2] They also ignored that the Attorney General's comments expressed an expectation of *success*. NDIL-ECF 1 ¶¶169–71.

which a State Attorney General is entitled. *Starr v. Fed. Aviation Admin.*, 589 F.2d 307, 315 (7th Cir. 1978); *see also* CA7-ECF 20 at 34 (Scudder, J., dissenting) ("A federal court finding [the Attorney General] has enforced Florida law in bad faith is very serious constitutional business."). In fact, its "evidence" likely doesn't even meet Rule 11's burden.

*Younger* "is open and shut in [the Attorney General's] favor." CA7-ECF 20 at 30 (Scudder, J., dissenting).[3]

### B. The district court lacks personal jurisdiction.

The Northern District of Illinois lacks personal jurisdiction over Florida's Attorney General. To satisfy due process for specific personal jurisdiction, the defendant must have "'certain minimum contacts' with the forum state such that the 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Advanced Tactical*, 751 F.3d at 800–01 (quotation omitted). "[T]he relation between the defendant and the forum must arise out of contacts that the defendant himself creates with the forum. Contacts between the plaintiff . . . and the forum do not satisfy this requirement." *Id.* (cleaned up).

The Attorney General has only one suit-related contact with Illinois: service of the Amended Complaint. But contacts "incidental to litigation proceeding elsewhere" do not suffice for specific personal jurisdiction. *John Crane*, 891 F.3d at 696 (cleaned

---

[3] Bafflingly, the panel majority inferred that the Attorney General subjectively believes his Enforcement Action utterly lacks merit despite Judge Scudder's subjective view that it does not. CA7-ECF 20 at 20; *id.* at 31 (Scudder, J., dissenting). Such disagreement among reasonable minds defeats any inference of bad faith.

up).  "[D]irecting pleadings, discovery, and other litigation communications to an Illinois citizen facing suit in some other state—even in furtherance of a tortious scheme—is simply not the same as targeting that citizen *in Illinois*."  *Id.*; *see also Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985).

The district court and panel majority mistakenly believe that effects allegedly felt by AAP in Illinois constitute additional contacts between the Attorney General and Illinois.  NDIL-ECF 35 at 19; CA7-ECF 20 at 11–14.  But this belief relies on a misapplication of *Calder v. Jones*, 465 U.S. 783 (1984), that has been repeatedly rejected by the Supreme Court and this Court.

After *Calder*, this Court and other lower federal courts began applying the rule that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor."  *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997).  In 2014, however, the Supreme Court in *Walden* reigned in *Calder's* progeny.  571 U.S. at 287.  *Walden* explained that "[t]he crux of *Calder* was that the reputation-based 'effects' *of the alleged libel* connected the defendants to California, not just to the plaintiff" because "publication to third persons is a necessary element of libel."  *Id.* at 287–88 (emphasis added).  In that sense, "the defendants' intentional tort *actually occurred in California*."  *Id.* at 288 (emphasis added).  This follows because the connection between the defendants and California "was largely a function of the nature of the libel tort."  *Id.* at 297.  Even then, the publication had to be "combined with the various facts that gave the article a California focus," including the defendants' "phone calls to 'California sources.'"  *Id.* at 287–88.  *Walden* was a *Bivens* action,

11

not a libel case. *Id.* at 281. The defendant, therefore, had "no jurisdictionally relevant contacts with Nevada," despite knowing that his conduct would cause the plaintiffs to "suffer[] foreseeable harm in Nevada." *Id.* at 289.

Until now, this Court has heeded *Walden*'s instruction against extending *Calder* beyond the libel tort. *See Advanced Tactical*, 751 F.3d at 802 (recognizing that *Walden* overruled *Janmark*); *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 523 (7th Cir. 2018).[4] Yet the Panel Decision quotes a pre-*Walden* decision for the pre-*Walden* rule that "[u]nder *Calder*, personal jurisdiction based on the location of a plaintiff's injury is appropriate when a defendant 'expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there.'" CA7-ECF 20 at 11 (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hou. Metroplex, P.A.*, 623 F.3d 440, 445 (7th Cir. 2010)).

That was error. *Walden* holds that, outside the libel tort, the location of the plaintiff's alleged injuries is generally not "jurisdictionally relevant." 571 U.S. at 289. The Attorney General's statements concerning AAP are irrelevant because the "retaliation" AAP alleges is the *Enforcement Action*, not the Attorney general's criticism. AAP hasn't requested a preliminary injunction against the latter, nor could it. *Cf. Hayes v. Bd. of Educ. of the City of Chicago*, 176 F.4th 994, 1005 (7th Cir. 2026).

The Panel Decision similarly ignores this Court's precedents and instead relies on two out-of-circuit cases, *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir.

---

[4] Nearly a decade later, the same district judge that exceeded his personal jurisdiction bounds in *Ariel* has committed the same error here.

2020), and *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025). Both cases, however, overread *Calder* in a way this Court has rejected since *Walden* and are inapposite. The allegedly retaliatory actions in those cases—a mailed cease-and-desist letter and a mailed civil investigative demand—constituted physical entries into the plaintiffs' home states. *Defense Distributed*, 971 F.3d at 494–95; *Media Matters*, 138 F.4th at 577–78. Conversely, the alleged retaliation here—the Enforcement Action—was not a physical entry into Illinois.

The Attorney General will likely succeed due to lack of personal jurisdiction.

### C. Venue is improper.

The district court and the panel majority found that venue lies in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2), because that's where AAP is allegedly suffering injury. NDIL-ECF 35 at 25–27; CA7-ECF 20 at 14–15.

This Court has never accepted this plaintiff-centric interpretation of 28 U.S.C. § 1391(b)(2), which departs from the Supreme Court's decision in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 185 (1979) and renders § 1391(b)'s other provisions superfluous. *See Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 291 (N.D. Ill. 2019). The Panel Decision ignored *Leroy* and the Attorney General's textual argument.

### II. The Remaining Stay Factors Favor Defendant

"Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up). The panel majority determined that the preliminary injunction does not cause the Attorney

General irreparable harm because (1) Florida has enacted a ban on pediatric sex interventions, and (2) he took three months to amend his complaint. *See* CA7-ECF 20 at 24–25. This reasoning is flawed. First and foremost, it focuses on the wrong harm. The irreparable harm does not spring only from the delay caused to the state court proceedings—the injunction itself is an irreparable injury to a sovereign State.

Additionally, the preliminary injunction hasn't merely paused the state court proceedings—it's thrown them into chaos. Thanks to the injunction, the state court is faced with two fully briefed motions to dismiss filed by WPATH and Endocrine Society; a motion to dismiss filed by AAP with a response but no reply; a motion to partially stay the case filed by AAP; claims that turn on the concerted action of all three defendants; and a federal injunction barring the Attorney General from "pursuing" the Enforcement Action against one of those defendants. Confusion abounds and is already disrupting the Attorney General's ability to prosecute his claims against WPATH and Endocrine Society.

Finally, AAP's conduct continues to affect Florida families notwithstanding the enactment of SB 254, which contains exceptions allowing Florida physicians to provide "sex-reassignment" treatments in limited cases and doesn't prohibit non-excepted minors from traveling outside Florida to obtain such interventions. *See* Fla. Stat. § 456.52.

The "balance of harms" and the "public interest" both favor a stay as well. Absent a stay, Florida businesses and consumers will continue to suffer the consequences of AAP's illegal conduct. Were the injunction stayed, AAP would merely

14

*continue* asserting its First Amendment defense in state court—certainly no irreparable injury. *Younger*, 401 U.S. at 45–46.

*     *     *     *     *

The district court and the panel majority did more than inflict a grievous blow to federalism. They exercised naked "will instead of judgment." Federalist No. 78 (Hamilton). If public trust in the judiciary is flagging, it's likely traceable to cases like this. This Court should "declare the sense of the law," correct these errors, and stay the injunction. *Id.*

## CONCLUSION

This Court should rehear the Emergency Motion for Stay Pending Appeal en banc. In light of pending deadlines and motions in the district court, this Court, and state court, the Attorney General respectfully requests that this Court rule on this petition as soon as practicable, ideally before June 30, 2026.

June 23, 2026

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General*

RYAN D. NEWMAN
  *Chief Deputy Attorney General*

JASON HILBORN
  *Deputy Attorney General for*
  *Civil Enforcement*

*/s/ David M.S. Dewhirst*

DAVID M.S. DEWHIRST
  *Solicitor General*

JASON J. MUEHLHOFF
  *Chief Deputy Solicitor General*

SAMUEL F. ELLIOTT (Fla. Bar No. 1039898)
  *Deputy Solicitor General*
VINCENT LI
  *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
david.dewhirst@myfloridalegal.com

*Counsel for Attorney General*
*James Uthmeier*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished
by electronic service through the CM/ECF Portal on June 23, 2026, to all counsel of
record.

*/s/ David M.S. Dewhirst*
Solicitor General

16

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,890 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Seventh Circuit Rule 32(b) because it was prepared using Word for Microsoft in Century Schoolbook-point font, a proportionally spaced typeface in 12 point type.

*/s/ David M.S. Dewhirst*
Solicitor General