No. 26-2238

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

AMERICAN ACADEMY OF PEDIATRICS,

*Plaintiff-Appellee,*

v.

JAMES UTHMEIER, ATTORNEY GENERAL
OF THE STATE OF FLORIDA, in his official capacity,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, No. 1:26-cv-02401-MFK
The Honorable Matthew F. Kennelly, Judge

**BRIEF OF INDIANA, 20 OTHER STATES, AND THE ARIZONA LEGISLATURE AS AMICI CURIAE IN SUPPORT OF DEFENDANT-APPELLANT'S MOTION FOR REHEARING EN BANC**

THEODORE E. ROKITA
Attorney General of Indiana

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

JAMES A. BARTA
Solicitor General

LAUREN R. LABAUMBARD
Deputy Attorney General

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

As governmental parties, amici curiae are not required to file a disclosure statement. Fed. R. App. P. 26.1(a); 7th Cir. R. 26.1(a).

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ................................................................i

TABLE OF AUTHORITIES ..........................................................................................iii

INTRODUCTION AND INTEREST OF AMICI CURIAE.......................................... 1

ARGUMENT .................................................................................................................. 2

I.     The Panel Decision Disregards Supreme Court Precedent
To Blow a Hole in *Younger* ............................................................................... 2

II.    Embracing Such a Theory Under *Younger*'s Bad-Faith
Exception Would Have Far Reaching Consequences ...................................... 7

CONCLUSION.............................................................................................................. 10

ADDITIONAL SIGNATORIES .................................................................................. 11

ii

## TABLE OF AUTHORITIES

**CASES**

*ActBlue LLC v. Paxton*,
No. 26-11986-RGS, 2026 WL 1694290 (D. Mass. June 11, 2026)........................... 2

*Am. Acad. of Pediatrics v. Uthmeier*,
No. 26 C 2401, 2026 WL 1552734 (N.D. Ill. June 2, 2026) ..................................... 2

*Brandt ex rel. Brandt v. Griffin*,
147 F.4th 867 (8th Cir. 2025).................................................................................. 6

*California v. Chrome Holding Co.*,
No. CGC-26-636891 (Cal. Super. Ct. May 27, 2026)............................................... 8

*Collins v. Kendall Cnty.*,
807 F.2d 95 (7th Cir. 1986) ................................................................................. 3, 4

*Crenshaw v. Sup. Ct. of Ind.*,
170 F.3d 725 (7th Cir. 1999) ................................................................................... 4

*Diamond "D" Const. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002)..................................................................................... 3

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) ................................................................................................. 3

*FTC v. WPATH*,
No. 4:26-cv-00748-P (N.D. Tex. June 17, 2026)...................................................... 4

*Grandco Corp. v. Rochford*,
536 F.2d 197 (7th Cir. 1976) ................................................................................... 4

*Harrison v. Lee Auto Holdings, Inc.*,
295 So. 3d 857 (Fla. Dist. Ct. App. 2020) .............................................................. 6

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975) ..................................................................................... 3, 5, 7, 9

*Indiana v. Roblox Corp.*,
No. 29D01-2605-PL-005581 (Ind. Super. Ct. May 6, 2026) ................................... 8

*Indiana v. TikTok, Inc.*,
No. 02D02-2212-PL-000400 (Ind. Super. Ct. Dec. 7, 2022) ................................... 8

iii

CASES [CONT'D]

*K.C. v. Individual Members of Med. Licensing Bd. of Ind.*,
    121 F.4th 604 (7th Cir. 2024) ................................................................. 6

*Kentucky v. Character Techs., Inc.*,
    No. 26-CI-00029 (Ky. Cir. Ct. Jan. 8, 2026) ........................................ 8

*Kugler v. Helfant*,
    421 U.S. 117 (1975) ................................................................................ 3

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ........................................................................ 2, 5, 7

*Moore v. Sims*,
    442 U.S. 415 (1979) ................................................................................ 5

*Nader v. Keith*,
    385 F.3d 729 (7th Cir. 2004) ................................................................. 9

*O'Keefe v. Chisholm*,
    769 F.3d 936 (7th Cir. 2014) ................................................................. 3

*Perez v. Ledesma*,
    401 U.S. 82 (1971) .................................................................................. 3

*Suris v. Gilmore Liquidating, Inc.*,
    651 So. 2d 1282 (Fla. Dist. Ct. App. 1995) .......................................... 6

*Texas v. Institutional S'holder Servs., Inc.*,
    No. 471-03459-2026 (Tex. Dist. Ct. May 20, 2026) ............................. 8

*Texas v. Meta Platforms, Inc.*,
    No. 26-0393 (Tex. Dist. Ct. May 21, 2026) .......................................... 8

*Trainor v. Hernandez*,
    431 U.S. 434 (1977) ................................................................................ 3

*Washington v. Albertsons*,
    No. 26-2-13757-9 SEA (Wash. Super. Ct. Apr. 27, 2026) ................... 8

*Yelp Inc. v. Paxton*,
    137 F.4th 944 (9th Cir. 2025) ....................................................... 3, 5, 7, 8

*Younger v. Harris*,
    401 U.S. 37 (1971) .............................................................................. 1, 2

iv

**OTHER AUTHORITIES**

Indiana Attorney General Todd Rokita, *Attorney General Todd Rokita launches litigation against TikTok to protect children and combat threats from China*, State of Ind. (Dec. 7, 2022), https://events.in.gov/event/attorney_general_todd_rokita_launches_ litigation_against_tiktok_to_protect_children_and_combat_threats_ from_china ............................................................................................... 8

Nebraska Attorney General Mike Hilgers, *Nebraska Attorney General Hilgers Files Lawsuit Against Roblox for Enabling Child Exploitation and Deceptive Safety Practices*, Neb. Att'y Gen. (Mar. 4, 2026), https://ago.nebraska.gov/nebraska-attorney-general-hilgers-files- lawsuit-against-roblox-enabling-child-exploitation-and......................................... 8

New York Attorney General Letitia James, *Attorney General James Sues Payday Lending Companies for Exploiting Workers with Illegal Loans*, N.Y. State Att'y Gen. (Apr. 14, 2025), https://ag.ny.gov/press-release/2025/attorney-general-james-sues- payday-lending-companies-exploiting-workers-illegal ..................................... 8, 9

Vermont Attorney General Charity Clark, *Attorney General Clark Sues Meta for Instagram's Harm to Teens' Mental Health*, Vt. Att'y Gen. (Oct. 24, 2023), https://ago.vermont.gov/blog/2023/10/24/attorney- general-clark-sues-meta-instagrams-harm-teens-mental-health .......................... 8

**INTRODUCTION AND INTEREST OF AMICI CURIAE**

Every year, States bring dozens upon dozens of lawsuits to protect their citizens from unfair, misleading, deceptive, abusive, or otherwise improper conduct—from consumer-protection actions over product safety to actions against social-media platforms for misleading and deceptive representations. Refer to the press releases and social-media posts of any state Attorney General for example after example. Sometimes, of course, targets of state consumer-protection actions vehemently disagree about an action's merit, its constitutionality, or the challenged conduct's social utility. But the ease with which disagreements can arise is why they do not—or at least should not—furnish a reason to displace state courts from their proper constitutional role in resolving cases arising under state law. Federal jurisdiction would soon swallow state authority if a federal district court could seize control of a state-court action merely because it might reach a different decision than a state court.

Though the panel majority in this case nodded to state interests, it ultimately endorsed a theory of federal judicial oversight that "inflicts a grievous blow to federalism" and evinces a lack of respect for state courts. Op. 27 (Scudder, J., dissenting). Remarkably, the panel majority deemed it proper for a federal court sitting in Illinois to reach across the country to enjoin Florida's Attorney General from pursuing an action against American Academy of Pediatrics (AAP) in Florida court for violating Florida law—an intrusion the Supreme Court has never approved under the exception the majority invoked since announcing a general rule against federal interference in *Younger v. Harris*, 401 U.S. 37 (1971). And more remarkably still, the panel

1

justified its decision by pointing to some of the most common conduct imaginable—its impression that the Attorney General's claims "appear weak" and his "public comments opposing" the dangerous procedures that his suit accuses AAP (and other groups) of deceptively promoting. Op. 20, 22 (majority op.).

It is no stretch to say that the majority's opinion paves the way for state defendants to "turn to federal court whenever they think a state complaint warrants dismissal and a public comment suggests 'bad faith,'" Op. 35 (Scudder, J., dissenting)—indeed, the district court's injunction in this case already has, *see ActBlue LLC v. Paxton*, No. 26-11986-RGS, 2026 WL 1694290, at *3 (D. Mass. June 11, 2026) (citing *Am. Acad. of Pediatrics v. Uthmeier*, No. 26 C 2401, 2026 WL 1552734 (N.D. Ill. June 2, 2026)). All of that is of grave concern to amici States. Left unreviewed, the panel decision could soon displace state courts from their proper role in resolving state-court actions based on state law in a wide variety of disputes. Amici urge this Court to grant en banc rehearing to ensure this case will not be a template for halting state proceedings and hamstringing States' abilities to protect their citizens.

## ARGUMENT

### I.    The Panel Decision Disregards Supreme Court Precedent To Blow a Hole in *Younger*

*Younger v. Harris*, 401 U.S. 37 (1971), stands for an important principle: "[P]roper respect" for States as sovereigns requires that state courts be left free to perform their functions where States bring criminal or civil actions to enforce their laws. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (citation omitted). "Only in cases of proven harassment or prosecutions

undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances" is federal interference with ongoing state-court proceedings appropriate. *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).

This bad-faith exception is "narrow." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975). Before *Younger*, the Supreme Court applied something like a bad-faith exception only once, in a case involving repeated acts of harassment that violated civil rights. *See Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965). And since announcing *Younger* decades ago, the Supreme Court has never again found that "bad faith" took a case outside of *Younger*. Rather, it has consistently emphasized that a party must make a showing similar to that made in *Dombrowski*, describing this exception to *Younger* as requiring something like "*proven* harassment" or "prosecutions undertaken by state officials *in bad faith without hope* of obtaining a valid conviction." *Perez*, 401 U.S. at 85 (emphases added); *see Trainor v. Hernandez*, 431 U.S. 434, 442 (1977); *Huffman*, 420 U.S. at 611; *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975).

The term "without hope" conveys just how difficult the standard is to satisfy. *See, e.g.*, *Yelp Inc. v. Paxton*, 137 F.4th 944, 952 (9th Cir. 2025) (bad faith exists "when the state court action is based on a 'clearly inapplicable' law, for which 'there was never any remote chance'" of a valid conviction) (citation omitted)); *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002) (bad faith exists "only when the state proceeding is brought with no legitimate purpose"); *O'Keefe v. Chisholm*, 769 F.3d 936, 940 (7th Cir. 2014) ("[n]o reasonable person could have thought that the proceeding would lead to a valid conviction"); *Collins v. Kendall*

3

*Cnty.*, 807 F.2d 95, 101 (7th Cir. 1986) (bad faith requires "state officials [to be] using or threatening to use prosecutions, regardless of their outcome, as instrumentalities for the suppression of speech" (cleaned up)). As this Court has previously made clear, the mere fact that a State could lose an enforcement action, or that a "state statute is unconstitutional," "does not justify federal relief." *Grandco Corp. v. Rochford*, 536 F.2d 197, 202 (7th Cir. 1976); *see Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999); *Collins*, 807 F.2d at 98–99.

But the panel endorsed a theory of "bad faith" so expansive that virtually any party with a half-decent defense to a state-court action and a colorable grievance can sidestep *Younger*. To start, the panel majority criticized the Florida Attorney General for pursuing state-law claims that, in its view, "appear weak." Op. 20. That is questionable. No Florida court has yet ruled that the claims are utterly without merit under Florida law, and it very well may turn out that the Attorney General will win his lawsuit in state court. In fact, the Federal Trade Commission and several States recently brought a lawsuit similar to Florida's alleging that one of AAP's co-defendants in the Florida litigation made similarly deceptive and misleading statements regarding gender-transition procedures. *See* Compl. at 24, 26, 36, *FTC v. WPATH*, No. 4:26-cv-00748-P (N.D. Tex. June 17, 2026). But the panel made no serious effort to discern how Florida courts would apply their own law, as one would expect a federal court to do in any case about state law. It did not cite a single Florida decision. Rather, the panel considered one factor only—its own view of a "weak" claim.

4

But *even if* the majority was correct, "very weak claims are not uncommon." Op. 31, 33 (Scudder, J., dissenting). Treating weak or even very weak claims as a license for federal intervention would improperly displace state courts from their role as "the principal expositors of state law." *Moore v. Sims*, 442 U.S. 415, 429 (1979); *see Huffman*, 420 U.S. at 603 ("The seriousness of federal judicial interference with state civil functions has long been recognized by this Court."). As decision after decision has emphasized, a federal court's belief that a state-law claim is a loser or that a state action infringes constitutional rights does not itself justify federal intervention. *See Yelp*, 137 F.4th at 953 ("Many cases applying *Younger*—and *Younger* itself—abstained from enjoining state court proceedings in the face of arguments that applying a state statute would be unconstitutional, including under the First Amendment."). Proper respect for state courts requires letting state courts decide those issues for themselves through the normal litigation process. *See Middlesex*, 457 U.S. at 431.

Other passages from the panel's decision underscore the extent to which the panel treated *Younger*'s bad-faith exception as a license to ignore state law and to superintend the operations of state courts. For example, the panel embraced the district court's decision to fault the Florida Attorney General for making allegations that lacked supporting "citations" or, in the court's view, sufficient "nuance." Dkt. 35 at 46–47; *see* Op. 22. But no rule of Florida procedure requires citations in a complaint or makes insufficient "nuance" ground for dismissal. Indeed, both the panel and district court ignored Florida decisions indicating that whether AAP misled consumers with statements about puberty blockers—such as AAP's claim that administering

puberty blockers to disrupt a child's normal development is "reversible," Dkt. 35 at 47—is a question for a jury. *See, e.g.*, *Suris v. Gilmore Liquidating, Inc.*, 651 So. 2d 1282, 1283 (Fla. Dist. Ct. App. 1995); *Harrison v. Lee Auto Holdings, Inc.*, 295 So. 3d 857, 863 (Fla. Dist. Ct. App. 2020). The panel effectively reduced *Younger*'s bad-faith analysis to whether a federal court would countenance a state-law claim if tasked with developing state law.

None of the other "evidence" the panel cited can rescue the bad-faith analysis— indeed, the banality of conduct betrays the extent to which its decision threatens to explode *Younger*'s bad-faith exception. The panel cited to the Attorney General's "public comments opposing gender-affirming care and vowing to hold AAP accounta- ble for 'mutilating children.'" Op. 22. But the panel never explained why it is a prob- lem for a public official to believe that minors should not be subjected to the gender- transition procedures or to communicate that view to constituents. Nor is an expla- nation apparent. After all, this Court has already held that it is "legitimate" for state officials to "protect[]" minors from the "novel and uncertain medical treatment" for minors that AAP has promoted. *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 627 (7th Cir. 2024); *see Brandt ex rel. Brandt v. Griffin*, 147 F.4th 867, 884 (8th Cir. 2025) (similar).

And even if the Court had not already recognized that the Florida Attorney General's views are legitimate, holding them would not be disqualifying. As the Ninth Circuit has explained, "state Attorneys General and other state officials are entitled to have enforcement priorities and policy positions" and to act consistent with them.

*Yelp*, 137 F.4th at 955–56. If "an enforcement action consistent with [a] policy direction were enough to establish a retaliatory motive, state courts would regularly be stripped of their authority at the hands of federal injunctions—directly contrary to *Younger*'s overarching message of respect for state courts." *Id.* at 956. Yet the panel disregarded that principle by equating "bad faith" with bringing an enforcement action that implicates a "sensitive matter on which people disagree." *Id.*

Perhaps most confounding of all, the panel agreed with the district court's characterization of some of the most routine conduct conceivable—namely, serving a state-court complaint within the time allowed by state law and pursuing state-law claims that the defendant disputes—as evidence of bad faith. *See* Op. 24–25. But a state's enforcement of its own law to protect its citizens in a manner that state law allows does not equate to bad faith. *See Huffman*, 420 U.S. at 604–05. If the law were otherwise, nothing would be left of *Younger*. Virtually any party who thought a state enforcement action could have been litigated differently (*i.e.*, more favorably to that party) would be able to claim "bad faith." Leaving intact the panel's extraordinary rationales for allowing a district court to reach across the country to interfere with an ongoing state enforcement action "would trivialize the principles of comity and federalism." *Middlesex*, 457 U.S. at 437; *see* Op. 34 (Scudder, J., dissenting).

## II. Embracing Such a Theory Under *Younger*'s Bad-Faith Exception Would Have Far Reaching Consequences

As should be apparent from the discussion above, the panel's approach to *Younger* threatens to upend the federalist structure and restrict States' ability to protect their citizens. State Attorneys General from both political parties regularly

7

initiate civil-enforcement actions under consumer protection, licensing, and antitrust laws to protect people from harm.[1] Many implicate "sensitive matter[s]" about which people disagree. *Yelp*, 137 F.4th at 955–56. Some involve untested applications of state law or present novel First Amendment issues. And of course state Attorneys General from both political parties—many of whom are elected officials—sometimes express forceful opinions about companies accused of harming consumers and breaking state laws.[2] Thus, if the considerations that the panel cited here are enough to

---

[1] *See, e.g.*, *Indiana v. TikTok, Inc.*, No. 02D02-2212-PL-000400 (Ind. Super. Ct. Dec. 7, 2022); *Indiana v. Roblox Corp.*, No. 29D01-2605-PL-005581 (Ind. Super. Ct. May 6, 2026); *California v. Chrome Holding Co.*, No. CGC-26-636891 (Cal. Super. Ct. May 27, 2026); *Kentucky v. Character Techs., Inc.*, No. 26-CI-00029 (Ky. Cir. Ct. Jan. 8, 2026); *Texas v. Institutional S'holder Servs., Inc.*, No. 471-03459-2026 (Tex. Dist. Ct. May 20, 2026); *Texas v. Meta Platforms, Inc.*, No. 26-0393 (Tex. Dist. Ct. May 21, 2026); *Washington v. Albertsons*, No. 26-2-13757-9 SEA (Wash. Super. Ct. Apr. 27, 2026).

[2] For example, in seeking to hold TikTok accountable for deceiving Indiana consumers, the Indiana Attorney General explained that the company had unleashed a "malicious" app on "unsuspecting Indiana consumers." Indiana Attorney General Todd Rokita, *Attorney General Todd Rokita launches litigation against TikTok to protect children and combat threats from China*, State of Ind. (Dec. 7, 2022), https://events.in.gov/event/attorney_general_todd_rokita_launches_litigation _against_tiktok_to_protect_children_and_combat_threats_from_china. In suing Meta, the Vermont Attorney General accused the company of "knowingly design[ing] and develop[ing] Instagram features to exploit teens' vulnerabilities to maximize revenue." Vermont Attorney General Charity Clark, *Attorney General Clark Sues Meta for Instagram's Harm to Teens' Mental Health*, Vt. Att'y Gen. (Oct. 24, 2023), https://ago.vermont.gov/blog/2023/10/24/attorney-general-clark-sues-meta-instagrams-harm-teens-mental-health. In suing Roblox, the Nebraska Attorney General observed that the company had violated "the trust of families, all while creating a playground for predators and exposing children to graphic and dangerous content." Nebraska Attorney General Mike Hilgers, *Nebraska Attorney General Hilgers Files Lawsuit Against Roblox for Enabling Child Exploitation and Deceptive Safety Practices*, Neb. Att'y Gen. (Mar. 4, 2026), https://ago.nebraska.gov/nebraska-attorney-general-hilgers-files-lawsuit-against-roblox-enabling-child-exploitation-and. And when suing payday lending companies, the New York Attorney General described them as

8

establish bad faith, federal courts will soon find themselves asked to oversee all manner of state-court litigation. *See* Op. 35 (Scudder, J., dissenting). Any party able to argue a claim is "weak" or that a state Attorney General expressed opinions too strongly will be able to sidestep *Younger*'s command of deference to state courts.

The resulting harms would go well beyond damage to state sovereignty and lack of respect for state courts. When federal district courts fail to respect *Younger*'s limits, they effectively immunize parties from state regulatory action. *See Nader v. Keith*, 385 F.3d 729, 731–32 (7th Cir. 2004) (observing that a defendant facing an active state-court proceeding against him cannot run to federal court and plead a federal defense with the intent of enjoining the state-court proceeding). This case illustrates the point. Without a stay, AAP will have interfered with an action seeking to hold AAP accountable for violations of Florida law for however long this appeal and, if necessary, any further proceedings take to litigate. That would be "quite costly in terms of the interests which *Younger* seeks to protect." *Huffman*, 420 U.S. at 606.

Injunctions like the district court's also generate confusion and complexity, demonstrating exactly why a stay is needed. AAP is just one of three co-defendants in the Florida lawsuit—which asserts state antitrust and RICO claims against all three defendants—yet the injunction in this case grants relief only to AAP. Dkt. 39. That leaves the Attorney General with no clear or sensible way forward. Is he

---

"predatory" and denounced their conduct as "downright shameful." New York Attorney General Letitia James, *Attorney General James Sues Payday Lending Companies for Exploiting Workers with Illegal Loans*, N.Y. State Att'y Gen. (Apr. 14, 2025), https://ag.ny.gov/press-release/2025/attorney-general-james-sues-payday-lending-companies-exploiting-workers-illegal.

supposed to try a claim that requires proof of concerted behavior without being able to take discovery from an essential participant and proceed with a claim against it? And what is he to do if the state court—which is not bound by the injunction—refuses to stay the case as to AAP and orders him to prosecute it? These questions demonstrate why any prolonged delay from the injunction is intolerable.

## CONCLUSION

This Court should grant the motion for rehearing en banc and stay the district court's preliminary injunction.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

LAUREN R. LABAUMBARD
Deputy Attorney General

Office of the Indiana Attorney General
Indiana Government Center South,
IGC-South, Fifth Floor
302 West Washington Street
Indianapolis, IN 46204-2770
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Amici Curiae*

10

## ADDITIONAL SIGNATORIES

STEVE MARSHALL
Attorney General
State of Alabama

CORI MILLS
Acting Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL LABRADOR
Attorney General
State of Idaho

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

RUSSELL COLEMAN
Attorney General
Commonwealth of Kentucky

LIZ MURRILL
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

CATHERINE L. HANAWAY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW H. WRIGLEY
Attorney General
State of North Dakota

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

JONATHAN SKRMETTI
Attorney General and Reporter
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

KEITH G. KAUTZ
Attorney General
State of Wyoming

11

STEVE MONTENEGRO
Speaker of the Arizona
House of Representatives

WARREN PETERSEN
President of the
Arizona Legislature

**CERTIFICATE OF COMPLIANCE**

1.      This document contains 2,716 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

2.      This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

Dated: June 24, 2026                                         /s/ James A. Barta
                                                            JAMES A. BARTA
                                                            Solicitor General

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 24, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 24, 2026

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 W. Washington Street
Indianapolis, Indiana 46204
Telephone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov