IN THE

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

➤➤◄◄

**AMERICAN ACADEMY OF PEDIATRICS,**

*Plaintiff-Appellee,*

*v.*

**JAMES UTHMEIER, ATTORNEY GENERAL OF THE STATE OF FLORIDA, IN HIS OFFICIAL CAPACITY,**

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of Illinois, No. 1:26-cv-02401 (Kennelly, J.)

**Opposition to Emergency Petition for Rehearing En Banc of Panel Decision Denying Motion for Stay Pending Appeal**

Jack R. Bierig
J. Michael Showalter
ARENTFOX SCHIFF LLP
233 S. Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 528-5500

Sarah E. Harrington
    *Counsel of Record*
Amber M. Charles
Paul Killebrew
Alexandra J. Widas
Kendall T. Burchard
Christine Houle
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Plaintiff-Appellee American Academy of Pediatrics*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION ...........................................................................1

BACKGROUND ...........................................................................2

ARGUMENT ...............................................................................6

I.     Uthmeier Cannot Make the Onerous Showing Required to Justify Rehearing En Banc. ...........................................................6

II.    Review of the Order Is Unwarranted Because Uthmeier Is Unlikely to Succeed on the Merits. ...............................................7

     A.     Review of the Panel's *Younger* Analysis Is Unwarranted. ..................................................................7

     B.     Review of the Panel's Personal Jurisdiction Analysis Is Unwarranted. ...............................................................13

     C.     Review of the Panel's Venue Analysis Is Unwarranted. .......17

III.   Uthmeier Has Not Established He Will Suffer Irreparable Harm Absent a Stay Pending His Expedited Appeal. ...................17

IV.   Uthmeier Cannot Satisfy the Other Stay Factors. ........................20

CONCLUSION ...........................................................................21

CERTIFICATE OF SERVICE ...........................................................22

CERTIFICATE OF COMPLIANCE ....................................................23

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases**

*Advanced Tactical Ordnance Sys., LLC v.*
*Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014)............................................................15

*Air Evac EMS v. McVey*,
37 F.4th 89 (4th Cir. 2022) ...............................................................9

*Ariel Invs. LLC v. Ariel Cap. Advisors LLC*,
881 F.3d 520 (7th Cir. 2018)............................................................15

*Bongino v. Daily Beast Co., LLC*,
477 F. Supp. 3d 1310 (S.D. Fla. 2020)............................................10

*Calder v. Jones*,
465 U.S. 783 (1984)................................................................... 13, 14

*Cannon v. Armstrong Containers Inc.*,
92 F.4th 688 (7th Cir. 2024) .............................................................7

*Christian Legal Soc'y v. Walker*,
453 F.3d 853 (7th Cir. 2006)............................................................20

*Collins v. Kendall Cnty.*,
807 F.2d 95 (7th Cir. 1986)..............................................................20

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020)...................................................... 14, 16

*Easley v. Reuss*,
532 F.3d 592 (7th Cir. 2008)..............................................................7

*Elrod v. Burns*,
427 U.S. 347 (1976)..........................................................................19

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
146 S. Ct. 1114 (2026).....................................................................14

*Illinois v. Trump,*
 155 F.4th 929 (7th Cir. 2025) ....................................................... 7

*John Crane, Inc. v. Shein Law Ctr., Ltd.,*
 891 F.3d 692 (7th Cir. 2018)....................................................... 16

*Leroy v. Great Western United Corp.,*
 443 U.S. 173 (1979) ..................................................................... 17

*Maryland v. King,*
 567 U.S. 1301 (2012) .................................................................... 17

*Media Matters for America v. Paxton,*
 138 F.4th 563 (D.C. Cir. 2025) .................................................. 16

*Netflix, Inc. v. Babin,*
 88 F.4th 1080 (5th Cir. 2023) .................................................... 12

*Ozturk v. Hyde,*
 155 F.4th 187 (2d Cir. 2025)........................................................ 5

*Tamboro v. Dworkin,*
 601 F.3d 693 (7th Cir. 2010)...................................................... 15

*United States v. Alvarez,*
 567 U.S. 709 (2012) ....................................................................... 3

*United States v. United Foods, Inc.,*
 533 U.S. 405 (2001) ..................................................................... 10

*Walden v. Fiore,*
 571 U.S. 277 (2014) ..................................................................... 14

*Wallace v. Benware,*
 67 F.3d 655 (7th Cir. 1995)........................................................ 20

*Wilk v. Am. Med. Ass'n,*
 895 F.2d 352 (7th Cir. 1990)...................................................... 11

*Yelp Inc. v. Paxton,*
 137 F.4th 944 (9th Cir. 2025) .................................................... 12

*Younger v. Harris*,
401 U.S. 37 (1971) .......................................................................... 8, 9

**Statutes**

28 U.S.C. § 1391(b)(2) ......................................................................... 17

Florida Antitrust Act of 1980, Fla. Stat. §§ 542.15–542.36 .............. 10, 11

Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. §§ 501.201–501.213 ...................................................... 9, 10

Florida Racketeer Influenced and Corrupt Organization
(RICO) Act, Fla. Stat. §§ 895.01–895.06 ......................................... 10

**Other Authorities**

14D *Wright & Miller's Federal Practice & Procedure* § 3802
(4th ed. 2026) ................................................................................. 17

American Academy of Pediatrics Mission and Strategic Plan,
https://www.aap.org/en/about-the-aap/strategic-plan/ ......................... 2

Amicus Br. for Florida et al., *First Choice Women's Resources
Centers, Inc. v. Davenport*, No. 24-781 (U.S. Aug. 28, 2025) ............... 1

# INTRODUCTION

This Court should deny Florida Attorney General James Uthmeier's extraordinary petition for rehearing en banc of his request for a stay pending appeal. Uthmeier will not suffer irreparable harm while the expedited appeal is pending, and the panel correctly concluded that he is unlikely to prevail.

A stay would inflict irreparable harm on the American Academy of Pediatrics ("AAP") by allowing Uthmeier to continue with his campaign of retaliation for and suppression of AAP's protected First Amendment activity. Uthmeier himself—joined by 15 of the Amici States—recently argued to the Supreme Court that legal process initiated by a state attorney general against an organization that provides purportedly "controversial" health-related advice creates "a reasonably objective chill" on the "exercise of First Amendment rights." Amicus Br. for Florida et al. at 4, *First Choice Women's Resources Ctrs., Inc. v. Davenport*, No. 24-781 (U.S. Aug. 28, 2025). Because the First Amendment protects the entire ideological spectrum, the same is true here—even though Uthmeier and Amici States disagree with the speech at issue.

1

1. "The mission of AAP is to attain optimal physical, mental and social health and well-being for all infants, children, adolescents and young adults." AAP, *Mission Statement & Core Strategic Plan*.[1] AAP implements its mission by adhering to its "Core Values," including its belief "[i]n the inherent worth of all children" and its conviction that "[c]hildren deserve optimal health and the highest quality health care." *Id.* In service of its mission, AAP engages in an array of conduct that is protected by the First Amendment, including publishing research and educational materials, submitting comments in response to government regulation, and issuing policy statements on issues affecting pediatric health. Stay.Op.3-4. In this era of deep division, some people and some States may disagree with AAP's statements. But AAP's educational discourse is protected by the First Amendment, no matter who disagrees with it.

As relevant here, AAP has publicly addressed the provision of gender-affirming care to children and adolescents who are transgender

---

[1] American Academy of Pediatrics Mission and Strategic Plan, https://www.aap.org/en/about-the-aap/strategic-plan/ (Sept. 16, 2024).

and gender-diverse.  In 2018, AAP issued a policy statement "focused on promoting the health and positive development" of such youth. Stay.Op.4.  The research-backed policy statement identifies available treatment options, while noting expressly that the statement "does not indicate an exclusive course of treatment or serve as a standard of medical care."  Stay.Op.4.  The statement further explains that some of the treatment options come with risks, flags that research in the area is "limited and provides varied results," and advises that appropriate care may vary in individual circumstances.  Stay.Op.4.

Uthmeier disagrees with AAP's speech on these issues.  Although "the remedy" for speech with which one disagrees is "more speech, not enforced silence," *United States v. Alvarez*, 567 U.S. 709, 728 (2012) (plurality) (citation omitted), Uthmeier did not merely voice his disagreement.  Instead, he took aim at AAP, filing a meritless lawsuit in Florida state court to silence and retaliate against AAP's protected activity of making public statements about gender-affirming care treatment options and submitting public comments opposing Florida's rulemaking.  Stay.Op.5-6.  Uthmeier seeks an injunction restricting AAP's protected activities in the future and ordering AAP's dissolution.

2. Seeking to halt Uthmeier's retaliatory campaign against its protected expressive activity, AAP filed this suit in its home jurisdiction, the place from which the speech Uthmeier targets emanated. After carefully reviewing the evidence, the district court preliminarily enjoined Uthmeier from prosecuting the Florida action, holding that AAP is likely to succeed on its claim that the action was intended both to punish AAP for engaging in constitutionally protected speech, association, and petitioning activity and to suppress future protected activity. Uthmeier appealed and sought a stay. A divided panel denied the motion, concluding that Uthmeier failed to establish either a likelihood of success or irreparable harm. Stay.Op.2-3. The panel also expedited the appeal. Dkt.21.

Uthmeier has now taken the extraordinary step of seeking rehearing en banc of his stay motion. The panel correctly determined that Uthmeier is unlikely to succeed and will suffer no irreparable harm while the Court considers his expedited appeal. But even if some judges on this Court view the merits or the assessment of harm to be close questions, neither issue comes close to clearing the hurdle for en banc review.

To AAP's knowledge, this Court has never granted rehearing en banc of a stay motion; it should not do so now. In similar circumstances, the Second Circuit denied the federal government's request for rehearing en banc of a stay denial when the appeal had been expedited, with no noted dissents. *Ozturk v. Hyde*, 155 F.4th 187 (2d Cir. 2025). Even the judges who strongly disagreed with the stay panel's assessment of the merits and equities in that case—and who thought those questions could merit en banc review after full consideration of the appeal—agreed to deny rehearing because at "this stage of the litigation," the motions panel's decision to deny the stay motion "will not constrain a subsequent merits panel—in this case or in others." *Id.* at 197 (Menashi, J., joined by Park, J., concurring). A majority of the judges who voted on the rehearing petition (plus two of their senior colleagues) viewed the request for rehearing while simultaneously engaging in expedited merits briefing as "border[ing] on frivolous." *Id.* at 207 (Nathan, J., joined by 5 active judges, concurring); *id.* at 215-16 (Parker and Carney, Senior Circuit Judges, "fully endors[ing]" concurrence). Here, too, "it is simply unnecessary and premature to involve the entire Circuit before the merits panel hears the case[]." *Id.* at 215 (Nathan, J.). The Court should

5

deny the petition for rehearing en banc.

**ARGUMENT**

In seeking rehearing en banc, Uthmeier does not meaningfully attempt to establish that he meets Rule 40's strict criteria. Granting Uthmeier's request for rehearing en banc would be an unprecedented waste of resources that would invite rehearing petitions whenever a stay request is denied. The Court should deny the petition.

## I. Uthmeier Cannot Make the Onerous Showing Required to Justify Rehearing En Banc.

Aside from including the required Rule 40 statements, Uthmeier does not even try to explain why the en banc Court should take the unprecedented step of reviewing a stay denial. The stay panel's opinion reflects a prediction of who is likely to prevail in the appeal and an assessment of relative harms and equities while the expedited appeal is pending. It does not announce binding precedent for the Circuit, as the panel acknowledged. Stay.Op.26 ("We emphasize that our conclusions are preliminary and…may differ after full briefing and argument."). Uthmeier's assertions that the panel's order creates conflicts with various decisions of this Court and the Supreme Court thus defy common sense.

This Court has repeatedly stressed "that the standards for granting rehearings en banc…are 'strict.'" *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 714 n.12 (7th Cir. 2024). Such review is "reserved for the truly exceptional cases." *Easley v. Reuss*, 532 F.3d 592, 594 (7th Cir. 2008). This case, in this posture, is not "truly exceptional" in the relevant sense. The appeal will be fully briefed by August 11 at the latest. If the merits panel affirms entry of the preliminary injunction (as AAP believes it should), Uthmeier can then seek further review.

## II. Review of the Order Is Unwarranted Because Uthmeier Is Unlikely to Succeed on the Merits.

Even if the panel's conclusions were binding, rehearing en banc would be unwarranted because Uthmeier cannot show that he is likely to succeed on the merits, that he will suffer irreparable harm absent a stay, or that the balance of the equities weighs in his favor. *Illinois v. Trump*, 155 F.4th 929, 936 (7th Cir. 2025).

### A. Review of the Panel's *Younger* Analysis Is Unwarranted.

Focusing on the panel's *Younger* analysis, Uthmeier raises the alarm of an intra-circuit conflict, Pet.1, and then fails to deliver. Uthmeier identifies no decision articulating a different version of *Younger*'s bad-faith standard or refusing to apply that exception in

materially similar circumstances, instead asserting only that this Court has "never applied" the bad-faith exception. Pet.6. But that does not establish a conflict or suggest that the panel erred. The rarity of bad-faith findings is fully consistent with the panel's acknowledgement that "[f]ederal courts do not apply the bad-faith exception to *Younger* lightly, or often." Stay.Op.18. And it underscores that the circumstances presented here are extraordinary.

1. As the full motions panel acknowledged, Stay.Op.16, 31, the comity-based *Younger* doctrine—which directs federal courts to refrain from enjoining state criminal (or criminal-like) cases—is not absolute, but permits a narrow window of "federal intervention" where, as here, a state proceeding is "brought in bad faith [or] to harass." *Younger v. Harris*, 401 U.S. 37, 56-57 (1971) (Brennan, J., concurring); *accord id.* at 53-54 (majority opinion). The panel correctly concluded that AAP is likely to show that Uthmeier brought his action in bad faith. Even if members of this Court disagree with that prediction, that fact-bound application of settled legal principles does not merit en banc review, particularly in this preliminary posture.

Uthmeier relies (Pet.5) on one unpublished Sixth Circuit decision

to argue that the Supreme Court and others have restricted *Younger*'s bad-faith exception to circumstances of repeated prosecutions. But the *Younger* Court itself used the disjunctive in describing the exception, declining to apply it absent a "suggestion that this single prosecution…is brought in bad faith *or* is only one of a series of repeated prosecutions to which he will be subjected." 401 U.S. at 49 (emphasis added); *accord Air Evac EMS v. McVey*, 37 F.4th 89 (4th Cir. 2022) (finding bad faith from a single insurance enforcement action).

2. AAP's evidence shows that the underlying action is meritless and that Uthmeier chose to leverage the suit to wage a press campaign and inflame, rather than litigate in good faith. Because Uthmeier's state-law claims are "as weak as they come," with "no objectively reasonable expectation of success," NDIL.Op.39-42, the district court correctly invoked the bad-faith exception and declined to abstain. *See* Stay.Op.20-22 (discussing weakness of state-law claims); Stay.Op.35-36 (Scudder, J., dissenting) ("To be sure, maybe [Uthmeier's] enforcement action lacks merit. Perhaps it even violates the First Amendment.").

Uthmeier (Pet.7) and the dissent (Stay.Op.32) defend Uthmeier's claim that AAP violated the Florida Deceptive and Unfair Trade

9

Practices Act (FDUTPA) by pointing to the statute's inclusion of nonprofit activity in its definition of "trade or commerce." But regardless of organizational status, FDUTPA applies only if the publication constitutes commercial speech, *e.g.*, *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020), which "does no more than propose a commercial transaction," *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). AAP's policy statements do not advertise, solicit, or offer any medical treatment, much less propose a commercial transaction. FDUTPA does not apply.

The Florida RICO claim is equally meritless. Uthmeier asserts (Pet.7) that AAP is liable for misleading advertising. But he fails to identify AAP statements that are either "misleading" or "advertising"— and, again, AAP does not sell or provide medical services. The Amended Complaint also fails to allege a criminal enterprise or criminal conspiracy, as RICO requires; rather, it describes the lawful and First Amendment-protected activities of medical associations that occasionally cited each other's work and joined in public advocacy.

Uthmeier's antitrust claim fails to allege any of the foundational requirements for such a claim—*i.e.*, market power in a cognizable product

10

market, an actionable agreement, or anti-competitive behavior. Uthmeier relies (Pet.7) on *Wilk v. American Medical Association*, 895 F.2d 352 (7th Cir. 1990), to suggest that AAP is liable as a "standards-setting" association. But AAP's statement itself clarifies it is not a standard of medical care and the stay panel correctly concluded that AAP's statements "surveying the field of gender-affirming care[] do not appear to have a…boycotting effect that implicates antitrust principles." Stay.Op.4, 21.

Further evidence of Uthmeier's bad faith appears on the face of his Complaint, which includes several "misleading" allegations about AAP's past guidance. Stay.Op.22. As the district court correctly concluded (NDIL.Op.42-43, 49-50), these "dishonest depiction[s]" "extend[ed] beyond the norm of vigorous representation." Uthmeier again makes no effort to rebut—or even acknowledge—the district court's troubling findings. Other indicia of bad faith include Uthmeier's three-month delay in serving AAP with his enforcement action, while touting the lawsuit publicly to criticize and threaten AAP, and his vow to hold AAP accountable for "mutilating children." Stay.Op.22. Against this backdrop of baseless underlying claims and misleading allegations, the

11

panel correctly concluded that Uthmeier's litigation behavior indicated bad faith.

As the motions panel concluded, "[o]ther circuits have applied" the "bad-faith exception to *Younger*" "in circumstances comparable to this one." Stay.Op. 23. Tellingly, Uthmeier does not acknowledge the cases cited by the panel, including *Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023), where Judge Willett found the district court "well within its discretion" to make "unfavorable inference[s]" about a prosecutor's post-indictment delay in pursuing charges in light of the other evidence that the prosecutor was acting with retaliatory animus. *Id.* at 1092. Uthmeier instead relies (Pet.8-9) on *Yelp Inc. v. Paxton*, 137 F.4th 944 (9th Cir. 2025), where the Ninth Circuit determined the Texas Attorney General's commentary on the Yelp CEO's personal views was insufficient to trigger *Younger*'s bad-faith exception. *Id.* at 956. But unlike here, the "enforcement action itself" was "not facially meritless," *id.*, or part of a larger pattern of behavior indicating bad faith.

The dissent's concern (Stay.Op.35) that "future state defendants" will "turn to federal court whenever they think a state complaint warrants dismissal" is overstated. Uthmeier's suit follows a long

12

campaign of state action seeking to retaliate against AAP for its protected expressive activity and to suppress speech with which the Florida state government disagrees. These circumstances are, with any hope, an outlier. But because this case presents concrete evidence of bad faith, the panel correctly concluded that AAP is likely to prevail on its argument that *Younger*'s exception applies.

**B. Review of the Panel's Personal Jurisdiction Analysis Is Unwarranted.**

Review of the panel's conclusion that personal jurisdiction is likely proper in Illinois is also unwarranted because it is compelled by Supreme Court precedent. Judge Scudder did not disagree, observing only that Uthmeier's personal jurisdiction (and venue) arguments were "worthy of further consideration." Stay.Op.30. By implicitly acknowledging (Pet.12-13) that the Fifth and D.C. Circuits have affirmed jurisdiction in materially similar situations, Uthmeier is inviting this Court to *create* a circuit split—hardly an appropriate use of en banc resources.

This case is no different from *Calder v. Jones*, 465 U.S. 783 (1984), which held that defendants had the requisite "minimum contacts" with the forum state because the harmful "effects" of their out-of-state conduct were felt in the forum. *Id.* at 788-89. Because the forum was "the focal

point" of the *Calder* defendants' out-of-state tortious activity, and because those defendants' actions predictably injured the plaintiff in the forum, defendants' out-of-state conduct connected them not just to the plaintiff, but to the forum itself. *Walden v. Fiore*, 571 U.S. 277, 287-88 (2014) (quoting *Calder*, 465 U.S. at 789).

So too here. The "focal point" of Uthmeier's conduct in Florida is AAP's actions and statements in Illinois. And the relief Uthmeier seeks would impose serious and long-lasting harms on AAP *in Illinois.* As the panel correctly concluded, "Uthmeier's actions appear calculated to cause injury to AAP in Illinois" by enjoining its First Amendment activity and seeking to "crush" its operations. Stay.Op.13-14. The Supreme Court recently held that a plaintiff is injured "when a defendant burdens a plaintiff's constitutional rights." *First Choice Women's Res. Ctrs., Inc. v. Davenport,* 146 S. Ct. 1114, 1125 (2026). And Uthmeier has intentionally directed the burden on AAP's expression to Illinois, where AAP's protected activities take place. Additionally, "[c]ensorship, like libel, is damaging not just to the speaker, but to surrounding audiences" such that the "harm occurs not just where it originates, but where it arrives." *Def. Distributed v. Grewal,* 971 F.3d 485, 495 n.9 (5th Cir. 2020).

Uthmeier's actions were thus directed not just at AAP, but at Illinois.

Uthmeier is incorrect (Pet.12) that the Supreme Court held in *Walden* that the place of a plaintiff's injuries is jurisdictionally relevant *only* when the plaintiff asserts a libel claim.[2] Like libel, First Amendment retaliation is a harm directed at a particular target where the target is located. Because Uthmeier's retaliation is both "specifically directed" at Illinois and causes "injury" there, Illinois is undoubtedly the "the focal point of the tort." *Tamboro v. Dworkin*, 601 F.3d 693, 706 (7th Cir. 2010). And, contrary to Uthmeier's assertion (Pet.11), the panel expressly disclaimed any theory that "fact of injury in the forum" alone is sufficient for personal jurisdiction, instead embracing the rule that personal jurisdiction is proper where a defendant "expressly aims its actions at the state." Stay.Op.11.

AAP's theory of personal jurisdiction is also on all fours with Judge Jones' opinion for the Fifth Circuit in *Defense Distributed* and Judge

---

[2] Uthmeier is equally wrong that this Court has done the same and the decisions he identifies say nothing of the sort. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (explaining *Calder* requires that "allegedly tortious activity" must be connected to "litigation-specific activity"); *Ariel Invs. LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 523 (7th Cir. 2018) (*Calder* inapplicable because conduct not expressly aimed at forum).

Edwards' opinion for the D.C. Circuit in *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025). Uthmeier's argument (Pet.12-13) that jurisdiction in those cases turned solely on the defendant's physical intrusion into the forum is incorrect. The Fifth Circuit noted that its personal jurisdiction "holding is derivative of the specific language used in [the] cease-and-desist letter coupled with other actions…that, together, demonstrate [an] intent to gut Defense Distributed's operations." 971 F.3d at 496 n.10. And the D.C. Circuit explained that personal jurisdiction was "not merely based on a defendant's entry into the forum state via mail and wire communications, but on the consequences and effects of the defendant's conduct." 138 F.4th at 579. Both courts affirmed injunctions that were not limited to physical intrusion into the plaintiffs' home States, but also blocked enforcement actions in each state attorney general's home State. Because those cases are materially identical to this one, the Court should decline Uthmeier's implicit request to create a circuit conflict.[3]

---

[3] Uthmeier's reliance (Pet.10-11) on *John Crane, Inc. v. Shein Law Center, Ltd.*, is also unavailing because Uthmeier's contacts with Illinois were not merely "incidental" to a different legal proceeding. 891 F.3d 692, 696 (7th Cir. 2018). Rather, suppression of AAP's First Amendment rights was the main event.

### C.     Review of the Panel's Venue Analysis Is Unwarranted.

The motions panel correctly concluded that AAP is likely to succeed on its argument that venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because that is *both* where AAP is suffering injury and where Uthmeier "intend[s]" AAP to experience the "adverse effects" of his conduct.  Stay.Op.15.  Uthmeier's continued insistence that *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979), controls is puzzling—because that case addressed a different version of the venue provision that did not include the operative language.  *See* 14D *Wright & Miller's Federal Practice & Procedure* § 3802 (4th ed. 2026) (noting that *Leroy*'s holding "is of limited, if any, significance now").

### III.  Uthmeier Has Not Established He Will Suffer Irreparable Harm Absent a Stay Pending His Expedited Appeal.

Uthmeier has not identified any concrete harm, irreparable or otherwise, that he would suffer while the Court considers his expedited appeal.  Instead, he argues that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  Pet.12 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).  But that does not apply here given Florida law and Uthmeier's own apparent lack of

17

urgency.

Initially, enjoining a baseless lawsuit imposes no injury and is nothing like declaring a state law unconstitutional, which is what Chief Justice Roberts considered in *King*. As the motions panel explained, moreover, the Florida action (even if successful) would have "no immediate effect" because Florida law criminalizes provision of gender-affirming care to minors. Stay.Op.24. Delaying Uthmeier's "retrospective interest" in "holding AAP accountable" for advocacy that predates passage of Florida's criminal ban is not irreparable harm.

Uthmeier's chronic delays are also inconsistent with irreparable harm. Uthmeier did not initiate suit until *years* after AAP engaged in the First Amendment-protected activity at issue, and even after filing suit, Uthmeier waited three months to effectuate service. Stay.Op.7. Rather than prosecute his claims expeditiously, Uthmeier focused on publicizing the suit and verbally attacking AAP. Stay.Op.7. Uthmeier did not even serve AAP until *after* AAP filed this lawsuit. Stay.Op.7.

Uthmeier is wrong, moreover, that the preliminary injunction has "thrown" the Florida proceedings "into chaos," disrupting his prosecution of AAP's co-defendants. Pet.22. Notwithstanding the injunction as to

18

AAP, AAP's co-defendants timely filed their elective replies in support of their individual motions to dismiss. Nothing prevents the Florida court from resolving those motions, which Uthmeier *encouraged* the Florida court to decide expeditiously. *See* ECF 47-1 at 3 ("The injunction does not…prevent the Court from ruling on pending motions."). Uthmeier has not identified any imminent deadlines that the preliminary injunction would disrupt. In short, Uthmeier has not identified *any* concrete irreparable harm from leaving the injunction in place while the expedited appeal proceeds.

In contrast, AAP would suffer irreparable harm if the Court were to enter a stay. AAP's suit seeks to stop Uthmeier from continuing his retaliatory campaign against AAP. Staying the preliminary injunction would allow his retaliation to resume, causing inherently irreparable First Amendment harm to AAP. *E.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Even now, Uthmeier has urged the Florida court to disregard the injunction, claiming it "does not bind [the court] in any way." ECF 47-1 at 3. A stay would only encourage Uthmeier to ramp up his campaign against AAP's

19

protected expressive activity.

## IV. Uthmeier Cannot Satisfy the Other Stay Factors.

Uthmeier dedicates less than a paragraph to arguing that the balance of the equities and the public interest favor a stay. Pet.14-15. As the panel found, neither does. Stay.Op.25.

Uthmeier does not dispute that AAP has made a "convincing showing" that the Florida action is retaliatory. Stay.Op.25. Even the dissent acknowledged the action "maybe…violates the First Amendment." Stay.Op.35-36. Uthmeier appeals to state sovereignty principles, but the First Amendment prohibits the type of retaliatory actions at issue here—and, as the panel explained, "[a] state 'does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or deter the exercise of constitutionally protected rights.'" Stay.Op.17 (quoting *Collins v. Kendall Cnty.*, 807 F.2d 95, 98 n.5 (7th Cir. 1986)).

Because "injunctions protecting First Amendment freedoms are always in the public interest," *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006), and the public interest "is not served by a campaign of petty harassment," *Wallace v. Benware*, 67 F.3d 655, 663

(7th Cir. 1995), Uthmeier's petition for rehearing should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the petition for rehearing en banc.

June 26, 2026

Respectfully submitted,

/s/ Sarah E. Harrington
Sarah E. Harrington
   *Counsel of Record*
Amber M. Charles
Paul Killebrew

Jack R. Bierig
J. Michael Showalter
ARENTFOX SCHIFF LLP
233 S. Wacker Drive
Suite 7100
Chicago, IL 60606
(312) 528-5500

Alexandra J. Widas
Kendall T. Burchard
Christine Houle
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on June 26, 2026, to all counsel of record.

June 26, 2026

/s/ *Sarah E. Harrington*
Sarah E. Harrington

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)-(4) because it contains 3,897 words. This document complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 40(d)(2) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) and 40(d)(2) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

June 26, 2026                      /s/ *Sarah E. Harrington*
                                       Sarah E. Harrington